In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 14-3744, 14-3721

UNITED STATES OF AMERICA,

*Plaintiff-Appellee / Cross-Appellant*,

*v.*

TERRY JOE SMITH,

*Defendant-Appellant / Cross-Appellee*.

Appeals from the United States District Court for the
Southern District of Indiana, Terre Haute Division.
No. 2:14-cr-00006-WTL-CMM–1 — **William T. Lawrence**, *Judge*.

ARGUED JANUARY 6, 2016 — DECIDED JANUARY 28, 2016

Before POSNER and WILLIAMS, *Circuit Judges*, and
PALLMEYER, *District Judge*.[*]

POSNER, *Circuit Judge*. Terry Joe Smith, a police officer in
Putnam County, Indiana (roughly midway between Indian-
apolis and Terre Haute), was convicted by a jury in federal
court of violating 18 U.S.C. § 242 by depriving two persons,
under color of state law (which is to say in Smith's capacity

---

[*] Of the Northern District of Illinois, sitting by designation.

as a police officer), of their constitutional right not to be subjected to the intentional use of unreasonable and excessive force. Sentenced to 14 months in prison to be followed by two years of supervised release, Smith appeals his conviction and the government appeals his sentence, the brevity of which, it contends, the judge failed to justify.

One night in September 2012 several Putnam County police officers, including Smith, set out in pursuit of Cletis Warren, a known criminal for whom an arrest warrant was outstanding. Warren was driving a pickup truck. The police caught up with it and were able to box it in with their police cars. Warren got out of the cab of his truck, jumped onto the truck's bed, and lay down on his back. Several officers followed him onto the truck's bed, picked him up, and handed him out of the truck to officers on the ground. All the officers except Smith testified at his trial that they had Warren under control when suddenly Smith punched him in the face with a closed fist, making a sound that two of the officers described as that of a tomato hitting a concrete wall. (Warren testified that he was in handcuffs when he was punched, whereas the officers testified that he was put in handcuffs after the punch. The sequence doesn't matter, and there is no evidence that the government knowingly elicited false testimony from Warren, as Smith argues.) Warren's face immediately swelled and bled extensively, and he was carried off in an ambulance to a hospital. Smith was overheard to say to one of the officers "I guarantee I broke that mother fucker's nose," and another officer testified that Smith "basically was stating that 'He [Warren] fucking deserved it.'"

Several months later Smith and other police officers were summoned to a domestic dispute in a trailer park; the dis-

pute had turned violent. Smith handcuffed the man involved in the dispute, who was named Jeffrey Land, and led him toward his patrol car. When they arrived, Smith raised Land in the air with Land's body horizontal to the ground, dropped him, and drove his (that is, Smith's) knee into Land's sternum or back, causing him to defecate. Later that day Smith bragged to another officer that it wasn't the first time that he'd made someone defecate himself.

The critical witnesses at Smith's trial (which lasted five days) were the police officers who had been present when he committed the violent, gratuitous, and sadistic batteries of Warren and Land. Smith's lawyer objected to portions of the police officers' testimony on the ground that it was expert testimony and the officers hadn't been qualified as expert witnesses under Fed. R. Evid. 702. The judge overruled the objection on the ground that the testimony was authorized by Rule 701. That rule provides that "if a witness is not testifying as an expert, testimony in the form of an opinion is limited to [an opinion] that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

Rule 701 was not needed to nail Smith. His bragging about breaking Warren's nose and causing Land (and apparently others) to defecate were admissions against interest, hence admissible regardless of Rule 701. And the testimony of the officers, who said they saw the punch to Warren's nose and simultaneously heard a sound like a tomato hitting a concrete wall and later saw the kneeing of Land's body,

was offered not as opinion evidence but as eyewitness evidence.

The officers did offer some opinion evidence, mainly that Smith had used excessive, unreasonable force against Warren and Land, but that evidence was not based on "scientific, technical, or other specialized knowledge" of the sort that only a witness whom the judge had qualified to be an expert witness would be allowed to testify to. See *United States v. Perkins*, 470 F.3d 150, 155–56 (4th Cir. 2006). Anyone who saw what the police saw Smith doing to Warren and Land would have been able to offer an opinion on whether the force was reasonable and would have characterized Smith's conduct the same way the officers did.

The recurring theme of the testimony of the officers who had witnessed Smith's assaults on the unresisting Warren and Land was that his use of force against them was unjustified because they weren't resisting. It would have been absurd to require the police officers to be qualified as experts on the use of force—perhaps subjected to a *Daubert* hearing—in order for them to be permitted to give testimony that a witness with no police training or experience could have given with utter confidence—and indeed that jurors would have found obvious without any evidence other than what the police had witnessed.

There is thus no basis for reversing Smith's conviction. But, turning to the government's cross-appeal, we find compelling reasons for vacating the sentence and thus requiring the district judge to resentence him. Smith's guidelines sentencing range was 33 to 41 months. The judge sentenced him to 14 months—less than half the bottom rung of the range. A sentence that far, or even farther, below the bottom of the

range need not be unreasonable. But the farther down the judge goes the more important it is that he give cogent reasons for rejecting the thinking of the Sentencing Commission. See *Gall v. United States*, 552 U.S. 38, 46–47 (2007).

The judge discussed at some length Smith's positive and negative characteristics. He described him as "indeed a person who does not shy away from work," who had been "an elected public official" and done service "as a volunteer coach in local leagues and schools," who had served on "victim impact panels," and whose criminal history was limited to a misdemeanor battery conviction—though for battering a child. The judge also said, however, that "you have used your official position to commit civil right[s] abuses" and that "there is no excuse for punching or otherwise abusing people who are handcuffed"—and "thus far, it would seem you have not taken responsibility for your actions." From the battering of the child the judge inferred that the defendant may have "some unaddressed anger control issues." (No kidding!) In addition, he noted that the defendant, when he was a corrections officer, had been accused of assaulting "two juveniles" in the correctional facility and having "lied to cover up [his] conduct." The judge also noted with disapproval Smith's "ghost employment … in the private sector … at the same time [that he was] working for the Putnam County Sheriff's Department."

Addressing him, the judge said that "if you appropriately address your anger management issues, … the risk of you reoffending will be slight. … I believe [your conduct in this case] will not be repeated if you focus on self-improvement." That's a big "if." And while the judge did require Smith, as a condition of supervised release, to undergo an anger-

management program offered by the probation service, he said nothing about the likely efficacy of such a program in Smith's case, given his history and his bizarre conduct toward Warren and Land. The period of supervised release imposed by the judge was two years, but the length of the anger-management program offered by the probation service is not mentioned; nor is the program described, or even identified.

The judge devoted the bulk of his sentencing statement to recounting cases in which defendants had been sentenced for crimes comparable to Smith's. In one case, *United States v. DiSantis*, 565 F.3d 354 (7th Cir. 2009), a police officer had struck a bystander who was filming a traffic stop by the officer, hitting the man on the head and face with the man's camera, then throwing the camera on the ground and stomping on it, and finally patting the man down and—for good measure, as it were—squeezing his genitals. For this brutal and bizarre behavior the officer was sentenced to 66 months in prison. It's not obvious to us that his behavior was more brutal than that visited by Smith on his victims, particularly when we note that Smith had assaulted two persons in separate incidents and had a history of violence; no such history is mentioned in Judge Lawrence's discussion of the camera case.

In *United States v. Christian*, 342 F.3d 744 (7th Cir. 2003), a police officer kneed and punched a suspect in the face after the suspect hurled insults at him, including a racial epithet. The officer received a 33-month prison sentence. In *United States v. White*, 68 F. App'x 707 (7th Cir. 2003), a police officer struck a woman, causing bruises, a laceration of her lip, and a hole in her cheek that required stitches inside and outside

her mouth. The officer was sentenced to 27 months in prison—again just one victim, yet given a sentence almost twice as long as Smith's. In *United States v. Cozzi*, 613 F.3d 725 (7th Cir. 2010), a police officer used a "nonpolice-issued weapon" called a "sap" (commonly a flat, beavertail-shaped leather impact weapon weighted with lead on at least one end) to beat an arrestee. No injury is mentioned yet the sentence was 40 months, almost three times the length of the sentence in this case.

In the last case the judge discussed, *United States v. Bartlett*, 567 F.3d 901 (7th Cir. 2009), three police officers were convicted of severely beating, kicking, and otherwise brutally assaulting two people they suspected of having stolen the badge of one of the officers. One victim's face was cut, and the other was threatened with being killed, had a pen thrust deep into his ear canal, suffered several broken bones, and was left lying naked in the street in a pool of his own blood. Two of the officers were sentenced to 188 months in prison—more than 13 times the length of the sentence imposed on Smith for his unjustified assaults on his two victims—and the third was sentenced to 208 months—roughly 15 times the length of Smith's sentence. Were Smith's crimes so slight a fraction of theirs? In short, does the judge's review of these cases provide *any* basis for thinking 14 months a proper sentence for Smith? Apart from the judge's reference to anger management and comments on Smith's minor good works in the community, no reason for the light sentence he imposed can be found in the transcript of the sentencing hearing.

We add that the judge imposed the standard conditions of supervised release without stating them in the sentencing

hearing. That was error too; the entire sentence must be given orally. E.g., *United States v. Harper*, 805 F.3d 818, 822 (7th Cir. 2015).

Conviction affirmed, sentence vacated, case remanded for full resentencing.