In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-2035

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

*v.*

TERRY JOE SMITH,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Terre Haute Division.
No. 2:14-cr-00006-WTL-CMM-1 — **William T. Lawrence**, *Judge.*

ARGUED APRIL 12, 2017 — DECIDED JUNE 19, 2017

Before POSNER, ROVNER, and WILLIAMS, *Circuit Judges*.

ROVNER, *Circuit Judge.* A jury convicted Terry Joe Smith, a police officer, of violating 18 U.S.C. § 242, by subjecting two men to the intentional use of unreasonable and excessive force, and violating their civil right to be free of such abuse. The district court sentenced Smith to fourteen months' imprisonment, less than half the low end of the applicable guidelines range. In the first appeal of the case, we affirmed Smith's

conviction but vacated the sentence and remanded for full resentencing, concluding that the court had failed to justify the below-guidelines sentence. *United States v. Smith*, 811 F.3d 907 (7th Cir. 2016). On remand, the court again sentenced Smith to fourteen months' imprisonment and once more failed to adequately explain or justify the below-guidelines sentence. We again vacate and remand for a complete re-sentencing.

## I.

Smith was a police officer employed by the Putnam County Sheriff's Department. In two separate incidents, Smith violently assaulted arrestees who were already under control and not actively resisting arrest. At trial, Smith's fellow police officers testified against him, describing the unwarranted attacks. In the first incident, Smith punched the arrestee in the face with a closed fist, causing bleeding and swelling on his face. Two officers testified that the blow made the sound of a tomato hitting a concrete wall. At the time, the arrestee was fully under the control of four other officers, and the arrestee posed no danger to Smith. A fellow officer testified that he had been trained to refrain from striking anyone in the head with a closed fist unless he was in a "deadly force" situation because such a blow could be lethal. After that incident, Smith bragged about his behavior to other officers and mocked those who objected to his unjustified attack. The arrestee had to be removed from the scene in an ambulance.

Several months later, in the second attack, Smith and other officers arrested an intoxicated man accused of battering a woman during a domestic dispute. Smith led the handcuffed arrestee to a patrol car. On reaching the car, Smith raised the

man into the air, threw him face-first onto the ground and drove his knee into the man's back with such force that the man defecated on himself.[1] The man suffered injuries to his back and ribs. Smith later bragged that this was not the first time he had made someone defecate on himself. Again, Smith's fellow officers testified that the arrestee was not actively resisting in any manner and that the use of force was unjustified and excessive.

Smith's guidelines range was thirty-three to forty-one months' imprisonment. Smith was in Criminal History Category I, based on one prior conviction for misdemeanor battery of a three-year-old child and the child's mother, who was then Smith's wife. The trial judge began the first sentencing hearing by considering the nature and circumstances of the offenses of conviction, noting only that he would rely on his memory of the trial and paragraphs four through seven of the presentence investigation report. The court noted difficulties in Smith's childhood. His young, troubled parents were unable to care for him but all four grandparents stepped in to raise him. His sister was killed by a drunk driver, leading Smith to participate in "victim impact panels" with the non-profit organization Mothers Against Drunk Driving. The court credited his work history, describing Smith as "indeed a person who does not shy away from work." R. 93, at 30. Smith had also served as an elected public official and a volunteer coach in local leagues and schools. He had the support of his community and family, including his surviving grandparents,

---

[1] Smith is six feet three inches tall and, at the time of his probation report, weighed 270 pounds.

and his fourth wife. He had custody of his son and guardian-
ship of the daughter of a friend who was incarcerated.

On the other hand, Smith had not taken responsibility for
his actions, had "unaddressed anger control issues," and had
engaged in other misconduct that had not resulted in criminal
charges. R. 93, at 33. In particular, he had assaulted two
juveniles at a facility where he was working as a correctional
officer, and then lied to cover up his conduct. At a different
facility, he had removed an inmate from the jail, supplied
tobacco products to that inmate, and improperly recorded the
conversations of other inmates. He had also engaged in "ghost
employment."[2] The court remarked that, if Smith addressed his
anger control issues, his risk of re-offending was "slight." R. 93,
at 34. Noting that there was no excuse for punching or abusing
persons who are handcuffed, the court compared the sentences
of other officers who had been convicted of engaging in similar
conduct. The district court then sentenced Smith to a fourteen-
month term, less than half the bottom end of the guidelines
range. In explaining the below-guidelines sentence, the court

---

[2]  There is some irony in the court crediting Smith as someone who "does
not shy away from work" given that Smith was fired from the Putnam
County Sheriff's Department for mistreating prisoners and giving an inmate
tobacco; fired from the Plainfield Juvenile Correctional Facility where he
assaulted two juveniles and falsified reports; fired from a job with Putnam
County and from a private employer for clocking in at both of those jobs at
the same time (the "ghost employment" incident); and finally fired again
by the Putnam County Sheriff for the unlawful conduct at the core of this
case. Although Smith does "not shy away from work," he also does not shy
away from inappropriate and unlawful conduct at work, losing five
separate jobs because of his behavior.

said only, "This sentence is a downward variance based upon the history and characteristics that Mr. Smith presents as well as the nature and circumstances of this offense." R. 93, at 38.

Smith appealed his conviction, and the government cross-appealed his sentence. We affirmed the conviction but vacated and remanded for a complete re-sentencing. *Smith*, 811 F.3d at 909–10. We noted that, although a sentence that low need not be unreasonable, the farther a judge strays from the guidelines range, "the more important it is that he give cogent reasons for rejecting the thinking of the Sentencing Commission." 811 F.3d at 910. We took issue with the court's conclusion that Smith was unlikely to re-offend if he addressed his anger management issues. Nothing in the record described the anger management program that Smith was required to undergo as a condition of supervised release and there was reason to question the efficacy of such an undefined program in light of Smith's history of violence and bizarre conduct towards the victims of his offenses of conviction.

As for the district court's efforts to compare Smith's offenses to those in other cases, we noted that in the majority of the cases, the conduct was either similar to or not as egregious as Smith's crimes and yet the sentences were much higher than the sentence meted out to Smith:

> Apart from the judge's reference to anger management and comments on Smith's minor good works in the community, no reason for the light sentence he imposed can be found in the transcript of the sentencing hearing.

811 F.3d at 911. We therefore vacated and remanded for resentencing.

Coincidentally, Smith was released from prison on the day our opinion issued. By the time he came to the court for resentencing, there was only slightly more information for the court to consider in setting his sentence. A large part of the second sentencing transcript tracks the first, virtually word for word. Since the first sentencing, Smith had served his time in prison without conduct violations. He completed fourteen hours of educational programming and worked in prison in plumbing and as a compound orderly. After his release and before resentencing, he secured employment, first as a car salesman and then as finance manager at the same dealership. He had paid his fine in full as well as the special assessment imposed at the first sentencing. He was enrolled in an eight-week anger management class, and was living with his wife, son and ward. His probation officer reported that Smith told her that he "had time to think about the victims of his offenses, and he is taking ownership of his actions. He is preparing a letter to the Court addressing this topic." R. 127, at 5.

Smith did make a statement at his second sentencing hearing but it is difficult to find mention of his victims or much of a sense of ownership of his actions in his remarks. We reproduce in full the letter he read aloud:

> Your Honor, as you may know, it is very dangerous being an ex-police officer in prison; but yet, there are little to no secrets in prison. Most inmates know why you are there before they even ask you. I had guys that hated me, not for being me but for my ex-

profession. I made it clear I was no longer a sheriff's deputy, and I was an inmate just like them; and I was there to better myself, just as they were.

As I took classes, worked, prayed and went to church next to these inmates, I learned that not all but most of them were just like me, people who made mistakes and were trying to better themselves. I witnessed guys getting GEDs, furthermore, getting trades in plumbing, heating and cooling, sewing, music and many other skills.

Many of these inmates had never once been in trouble while being incarcerated. They were role model inmates and doing everything they could to better themselves. One guy in particular named Paul was sentenced to 15 years. He spent most of his five years learning how to read and write. He finally obtained his GED. He then took the next year enrolling in a heating and cooling class where he completed it in four years. He had never been disciplined, yet, had several years to just sit and wait for his sentence to run out. He was just sitting there waiting for his out date.

Why do I tell you this? I tell you this because you made the right decision when it came to sentencing me. I want to be an example to other judges, prosecutors that not every man that makes a mistake needs a long sentence and that when you have done everything to better yourself and when you have years left to serve – to sit and wait for your sentence

to run out and the only thing you're waiting for is an out date, it is the family, children and communities that are serving the sentence.

I don't stand before you and say that I have a formula to fix the sentencing. I just—I have been on both sides; and while I once would say lock them up and throw away the key, I now say I was uneducated and so wrong.

While being incarcerated, I met doctors, politicians, pilots, cooks and even drug dealers. I now know that each case is special in its own way, and not everyone needs such a long sentence. I must say of all people, you understand that.

I can say that because of the sentence you handed me. You knew exactly what I needed to get back on track and I thank you. I hope my actions during and after my incarceration have validated your sentencing choice for me. I thank you for the opportunity you've given me. Thank you.

R. 135, at 12–14.

Despite the lack of any mention of his victims in the statement that was to explain his new-found "ownership" of his actions, the district court found it "telling" that Smith was now referring to his victims as victims when speaking to his probation officer. R. 135, at 31. The court then mentioned guideline section 3E1.1(a), which allows for a reduction in offense level for defendants who have accepted responsibility for their crimes. Noting that neither side proposed or discussed

a two-level reduction, the court nevertheless remarked that it was aware of the reduction as Smith appeared "to now be accepting responsibility for" his actions. R. 135, at 31. The court rejected Smith's argument that the deterrent effect of a sentence of imprisonment is speculative, and noted that Smith may continue to have "unaddressed anger control issues," as evidenced by his conviction for battering a three-year-old child. R. 135, at 32. The court mentioned Smith's other troubling acts that the government had again described, acts for which Smith suffered little or no consequences. Noting Smith's lack of conduct violations and his efforts toward education and work in prison, the court said that Smith's incarceration "may indeed have been helpful," and that Smith "probably [had] shown insightfulness in regards to the incarceration that [he] sustained." R. 135, at 34. The court found that Smith's enrollment in an eight-week anger management program was a "good start" that would be helpful going forward. The court recommended that the program director evaluate Smith at the end of that program, that the assessment be shared with his probation officer and that Smith should work with the probation officer for follow-up counseling. R. 135, at 34–35.

The court then discussed the need to avoid unwarranted sentencing disparities, discussing again some of the same cases it had considered at the first sentencing but going into more detail on the facts of each. In particular, the court considered *United States v. Christian*, 342 F.3d 744 (7th Cir. 2003). The court distinguished *Christian* on the ground that the officer was not involved in an arrest situation at the time he attacked an arrestee. The court was also reluctant to compare the cases because the court did not know Christian's background. The

court also addressed *United States v. Bartlett*, 567 F.3d 901 (7th Cir. 2009), a case that the court found involved conduct far beyond what Smith had done.

The court then sentenced Smith once again to a term of fourteen months' imprisonment, and two years of supervised release, giving him credit for the time already served in prison. The court noted:

> This sentence is a departure based upon Section 5K2.1, as well as a variance based upon the history and circumstances of this defendant as well as the nature and circumstances of this offense.

> I do not see any benefit in reincarcerating Mr. Smith. His anger control counseling would be interrupted. He will lose his job again. He will also disrupt the stability of his children, whom I assume have now adopted [sic] to having him back in the home.

R. 135, at 44. In addressing the need to promote respect for the law and deter others from committing similar crimes, the court mentioned that Smith had incurred two felony convictions, lost his job as a police officer, resigned his position on the city council, and lost his reputation within the community.[3] The government objected to the sentence on grounds of procedural and substantive unreasonableness, and has once again appealed from the sentence.

---

[3] Losing one's job and reputation are the normal consequences of committing a felony at work. It is unclear how these naturally occurring repercussions that are not part of any sentence would promote respect for the law and deter others from committing similar crimes.

**II.**

On appeal, the government contends that the court procedurally erred by failing to adequately explain why Smith received a considerably below-guidelines sentence, and by crediting Smith for acceptance of responsibility. The government also argues that the sentence is substantively unreasonable in light of the court's failure to justify it and because it creates an unwarranted disparity in comparison to similar cases nationwide. Our review of sentencing decisions is limited to whether they are reasonable, applying the abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 46 (2007); *United States v. McLaughlin*, 760 F.3d 699, 703 (7th Cir. 2014). We first must ensure that the district court committed no significant procedural error, such as incorrectly calculating the guidelines range, failing to consider the section 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to explain adequately the chosen sentence. *Gall*, 552 U.S. at 51. Whether the district court followed the proper procedures after *United States v. Booker*, 543 U.S. 220 (2005), in imposing sentence is a question of law we review *de novo*. *United States v. Mendoza*, 510 F.3d 749, 754 (7th Cir. 2007).

If the sentencing decision is procedurally sound, we then consider the substantive reasonableness of the sentence under the abuse-of-discretion standard, taking into account the totality of the circumstances, including the extent of any variance from the guidelines range. *Id*. Moreover, the Supreme Court found that it is:

> uncontroversial that a major departure should be
> supported by a more significant justification than a

> minor one. After settling on the appropriate sen-
> tence, [the judge] must adequately explain the
> chosen sentence to allow for meaningful appellate
> review and to promote the perception of fair sen-
> tencing.

*Gall*, 552 U.S. at 50. *See also United States v. Warner*, 792 F.3d 847, 855 (7th Cir. 2015) (noting that section 3553(c) requires the district judge to state in open court the reasons for imposing a particular sentence).

The parties agree that the district court correctly calculated the guidelines range, which was thirty-three to forty-one months. *See Gall*, 552 U.S. at 49 (a district court should begin all sentencing proceedings by correctly calculating the applicable guidelines range). The district court then substantially departed from the guidelines range, giving Smith a sentence that is less than half of the bottom of the range. When a judge decides to sentence outside the guidelines range, he or she "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.*

We agree with the government that the court erred procedurally by failing to adequately explain or justify the significantly below-guidelines sentence that it rendered. In justifying the sentence here, the court cited: (1) guidelines section 5K2.1; (2) the history and characteristics of the defendant; and (3) the nature and circumstances of the offense. We assume that the reference to guidelines section 5K2.1 was either a typographical error or a simple misstatement. Section 5K2.1 allows a court to increase a sentence above the guidelines range if death

resulted. Presumably, the court meant to refer to guidelines section 5K2.10, which the probation officer had cited in her recommendation for setting Smith's sentence. That provision allows a court to reduce a sentence below the guidelines range if "the victim's wrongful conduct contributed significantly to provoking the offense behavior." U.S.S.G. § 5K2.10. But the district court made no finding that either of Smith's victims did anything to provoke Smith's attacks. Moreover, the probation officer offered no evidence of provocation in the presentence investigation report and Smith cites no evidence that supports a conclusion that the victims provoked his attacks. Nor did the court consider the factors set forth in the guidelines policy statement, such as the relative size and strength of the victim compared to the defendant, the persistence of the victim's conduct, efforts by the defendant to prevent the confrontation, and the proportionality and reasonableness of the defendant's response to the victim's provocation, among other things. Nothing in the sentencing transcript or presentence investigation report would warrant application of section 5K2.10 in these circumstances. Because there was no discussion of guideline 5K2.10 (except for the brief, erroneous reference to section 5K2.1), we cannot be sure if the court meant to use it to justify the reduction in Smith's sentence. Because we are remanding for resentencing, we note that, if the court in fact relied on section 5K2.10, nothing in the record as it stands justifies application of that provision.

The sentencing judge also invoked the nature and circumstances of the offense as a reason to sentence below the guidelines. But the judge's only mention of the nature and circumstances of the offense came when he said that he would

rely on his memory of the trial and certain paragraphs of the presentence investigation report for his consideration of this factor. A review of the cited paragraphs of the presentence investigation report as well as the trial transcript shows that Smith twice violently attacked arrestees who were already under control and were not actively resisting arrest. These were typical excessive-force crimes. No mitigating circumstances are apparent from the record and the court cited none. *See e.g.*, *Warner*, 792 F.3d at 859 (noting as mitigating factors for the nature and circumstances of an offense that the defendant's crime was isolated and uncharacteristic, that the defendant was elderly and had no prior criminal history, that he posed no danger to society, and that he attempted to come forward and rectify his crime before he knew that he was under investigation). In fact, a court might consider it an aggravating factor that Smith was convicted of two counts of excessive force arising from separate incidents, each in circumstances that could not be explained by the heat of the moment. Moreover, he later bragged about his behavior and mocked his fellow officers when they questioned his actions. Before we can conclude that a court did not abuse its discretion, we have to satisfy ourselves that the court exercised its discretion, that is, that the court considered the factors relevant to that exercise. *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005). The court's brief mention of the nature and circumstances of the offense affords no basis to review that exercise of discretion.

We turn to the history and characteristics of the defendant. The government first asserts that the court committed procedural error in crediting Smith for acceptance of responsibility.

Section 3E1.1(a) of the guidelines provides, "If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels." The provision generally applies to defendants who truthfully admit the conduct comprising the offense of conviction:

> This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for such a reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur, for example, where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt (*e.g.*, to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

U.S.S.G. § 3E1.1, Commentary, Application Notes 1 & 2. It is clear from this language that Smith is not the type of defendant for whom the guideline was drafted. Smith has never truthfully admitted the conduct comprising the offense of conviction. Moreover, Smith put the government to its burden of proof at trial, denied the essential factual elements of guilt, was convicted, and served a period of incarceration before ever

uttering any words that could be construed as remorseful. Even a defendant who pleads guilty is not entitled to an adjustment for acceptance of responsibility as a matter of right. U.S.S.G. § 3E1.1, Commentary, Application Note 3; *United States v. Booker*, 248 F.3d 683, 690 (7th Cir. 2001). Rather, the defendant bears the burden of demonstrating to the district court that he accepts moral responsibility for his offense and is entitled to a reduction. *United States v. DeLeon*, 603 F.3d 397, 408 (7th Cir. 2010); *Booker*, 248 F.3d at 690.

The district court did not formally apply the two-level guideline reduction, instead noting only that the court was aware of the guideline and that Smith appeared now to be accepting responsibility. Presumably, then, the court meant that it would take Smith's purported acceptance of responsibility into account not as a guidelines factor but rather as a statutory matter under section 3553(a). The government asserts that it would be improper to import into the 3553(a) analysis a consideration that the guidelines expressly exclude. But after *United States v. Booker*, 543 U.S. 220 (2005), a sentencing judge has the discretion to disagree with a particular provision of the guidelines and to impose a non-guidelines sentence that, in his or her judgment, is more consistent with the statutory sentencing factors set out in section 3553(a). *Kimbrough v. United States*, 552 U.S. 85 (2007); *United States v. Rosales*, 813 F.3d 634, 637 (7th Cir. 2016).

In principle, therefore, a court could disagree with the provisions set forth in guideline section 3E1.1 and instead account for remorse as part of the section 3553(a) factors. In practice, though, there are two problems with the court's use

of Smith's remorse to reduce his sentence. First, it is entirely unclear from the record whether the court meant to do what we have just proposed. That is, it is unclear whether the court actually disagreed with the provisions of guideline 3E1.1 and meant to override the guideline with its own analysis. Second, and more importantly, the record is devoid of any actual expression of acceptance of responsibility or remorse by Smith. At most, Smith told his probation officer that he was ready to "take ownership" of his crimes, and would write a letter expounding on that ownership to the court. He also began to refer to his victims as victims. But Smith's statement to the court contained, at most, an acknowledgment that some—but not all—of his fellow prisoners were people like him, who had made mistakes and were seeking to better themselves. He also expressed his new-found belief that not all defendants required lengthy sentences, a principle he hoped the court would apply to him. He never mentioned his victims or his crimes unless one generously infers that the "mistake" to which he referred was senselessly beating arrestees who were already under control and posed no danger to him. He did not concede the facts of his offenses of conviction and he did not express regret for anything other than the length of a possible new sentence. It is certainly admirable that he learned in prison that prisoners are human beings like himself, but that is a far cry from an expression of remorse for the harms he caused or acceptance of responsibility for his crimes. There is nothing resembling the promised "ownership" in Smith's remarks to the court. Because the record does not reveal either a factual or a legal basis to support the reduction, it was procedural error to reduce Smith's sentence for acceptance of responsibility.

As for the remaining considerations relevant to the history and characteristics of the defendant, we noted in the first appeal that the judge had offered "no reason for the light sentence" imposed apart from a reference to anger management and Smith's minor good works in the community. *Smith*, 811 F.3d at 911. The government points out that little changed between the first and second sentencing proceedings, citing five additional considerations the court used to justify the sentence. The government contends that only one was proper and that it was inadequate to justify the sentence.

First, the court again referred to the benefits of an anger management course in reducing Smith's risk of re-offending. At the time of resentencing, Smith had started an eight-week class, which the court called a "good start." No doubt the class was a good start but the court did not address the essence of our concern, namely, whether such a program would in fact be effective in Smith's case, especially in light of his extensive history of violence against vulnerable persons and his bizarre conduct against the victims here. *Smith*, 811 F.3d at 910. It may be true that Smith is unlikely to re-offend if he learns to control his anger. But in light of his prior conduct and the lack of evidence that the contemplated program would effectively resolve his anger issues, there is no basis in the record as it stands to reduce Smith's sentence on the ground that he is unlikely to re-offend.

We have already considered and rejected the second factor on which the court relied in discounting Smith's sentence, whether he had accepted responsibility for his crimes. As the third consideration, the court cited the disruption to Smith's life, including the burden on his family, the loss of his job and

the interruption of his anger management program. But in sentencing a defendant, "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." U.S.S.G. § 5H1.6. Mitigation arguments that rely on the effects of incarceration on the defendant's children must identify consequences that go beyond those that any child would suffer when a parent is imprisoned. *United States v. Gary*, 613 F.3d 706, 710 (7th Cir. 2010). Extraordinary family circumstances may constitute a legitimate basis for imposing a below-guidelines sentence, under either guidelines provision 5H1.6 or under section 3553(a). *United States v. Schroeder*, 536 F.3d 746, 755–56 (7th Cir. 2008). But the court cited nothing unusual in Smith's family circumstances such as loss of care-taking or financial support that exceeds the harm ordinarily incident to incarceration for a similarly situated defendant. *See* U.S.S.G. § 5H1.6, Commentary, Application Note 1(B).

The court also declined to sentence Smith to further incarceration because an additional term of imprisonment would interrupt his anger management class. Although the guidelines provide that a downward departure may be appropriate to accomplish a specific treatment purpose if the defendant suffers from a mental or emotional condition, the court found that Smith has no history of mental health problems, no alcohol or substance abuse problems, was not under the care of a physician and was not taking any medications. *See* U.S.S.G. §§ 5C1.1, Commentary, Application Note 6 and 5H1.3; R. 135, at 28. Other than his apparent difficulties in controlling his anger, there is no record of a diagnosed mental health problem. Under these circumstances, it is difficult to justify a significant sentence reduction in order to avoid interrupting an

eight-week anger management class. Similarly, disruption of employment is an ordinary consequence of incarceration, and in Smith's case, a consequence that he visited upon himself at least five other times by engaging in misconduct at work. These are thin rationales for a significantly below-guidelines sentence, especially because these factors would apply to most defendants.

The court's fourth consideration in support of Smith's sentence was a comparison of the circumstances in similar, instructive cases. In our first remand, we found that the court's attempts to distinguish Smith's case from five similar cases was insufficient to justify the light sentence the court ordered for Smith. *Smith*, 811 F.3d at 910–11. This time, the court addressed two of the five cases that it previously discussed, going into greater detail about the facts of those cases. The court found that the officers' conduct in *United States v. Bartlett*, 567 F.3d 901 (7th Cir. 2009), was far more egregious than Smith's conduct. But we agreed that the conduct in that case was more abhorrent than Smith's acts here, and the defendants there were sentenced much more severely than Smith, with at least one defendant in that case receiving a sentence of 208 months, roughly fifteen times Smith's sentence. 811 F.3d at 911. The question we posed, though, remains unanswered: Were Smith's crimes so slight a fraction of theirs? The other cases, including *United States v. Christian*, 342 F.3d 744 (7th Cir. 2003), which the court discussed in more depth this time, similarly do not reveal a basis for the extent of the discount that the judge applied to Smith's sentence. In short, nothing in the court's discussion of those cases justifies Smith's sentence.

The government agrees that the fifth and final issue that the court considered was an appropriate factor as a general matter: rehabilitation. In *Pepper v. United States*, 562 U.S. 476, 480 (2011), the Supreme Court held that "when a defendant's sentence has been set aside on appeal, a district court at resentencing may consider evidence of the defendant's postsentencing rehabilitation and that such evidence may, in appropriate cases, support a downward variance from the now-advisory Federal Sentencing Guidelines range." On release from prison, Smith reunited with his family, which continues to support him. He once again became employed, and began an anger management program. He completed his sentence without conduct violations. These are laudable, positive signs but Smith still has not admitted the conduct underlying his conviction or expressed remorse for the harms he caused. This relatively minor evidence of rehabilitation must be assessed in light of Smith's history and characteristics. The government's accounting of Smith's appalling history includes an attack on a three-year-old child that left the child bruised and bleeding; an attack on that child's mother when she tried to intervene to protect the child; unprovoked, premeditated beatings of two juveniles in custody followed by lies about the incident in the official record; other abuses of power over inmates at another facility; and the dishonest behavior of clocking in at two jobs at the same time. At the first sentencing, the court acknowledged that these prior incidents brought to light by the government came in "uncontroverted."

R. 93, at 33.[4] Smith has not challenged the government's description of his history of violence and dishonesty. If there is a rationale to support a sentence that is less than half the low end of the guidelines, it is not apparent in the record here.

In light of these procedural errors, we must again vacate the sentence and remand for full resentencing. There is no reason to address the question of substantive reasonableness at this juncture. As we noted in our prior opinion, a sentence this far below the bottom of the guidelines range "need not be unreasonable," but "the farther down the judge goes the more important it is that he give cogent reasons for rejecting the thinking of the Sentencing Commission." *Smith*, 811 F.3d at 910. Circuit Rule 36 shall apply on remand.

---

[4]   After characterizing the government's account of Smith's past as "unconroverted," (R. 93, at 33), the court then seemed to doubt (at both sentencing hearings) the veracity of some of the most serious charges against Smith, the beatings of two juveniles in custody. *See* R. 93, at 34 ("If true, this incident would involve an assault upon two juveniles …"); R. 135, at 33 ("If true, this incident would involve an assault upon two juveniles …"). The government presented the results of a Plainfield Juvenile Correctional Facility internal affairs investigation into the incident, which concluded that two counts of battery and one count of making a false report had been substantiated against Smith. The incident was also investigated by Indiana's Family & Social Services Administration which concluded that allegations of physical abuse by Smith against two detainees of the Juvenile Correctional Facility had been substantiated. Although the investigations resulted in a recommendation for prosecution of Smith, that recommendation was apparently set aside for unknown reasons and Smith was simply terminated from his job. If there is a reason to doubt the veracity of the government's account of Smith's history, the normal course would be to hold a hearing before dismissing such serious allegations.

VACATED AND REMANDED.