In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-1541

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MARCOS CASTANEDA,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:17-cr-00038-jdp-1 — **James D. Peterson**, *Chief Judge.*

ARGUED OCTOBER 2, 2018 — DECIDED OCTOBER 19, 2018

Before BAUER, KANNE, and SCUDDER, *Circuit Judges.*

BAUER, *Circuit Judge.* Marcos Castaneda pleaded guilty to transporting methamphetamine as part of a 20-person conspiracy. Though the district court sentenced his coconspirators based on findings that they distributed mixtures containing methamphetamine, it sentenced Castaneda based on his handling of a smaller quantity of "Ice," or especially pure (at least 80%) methamphetamine. Pound for pound, the Sentencing Guidelines recommend punishing Ice-related crimes

more severely than crimes involving less-pure methamphetamine. The court also denied Castaneda a Guidelines reduction for acceptance of responsibility, given his unwillingness to admit to the apparent scope of his involvement in the conspiracy. Castaneda challenges both rulings. We affirm his 20-year prison sentence.

## I. Background

Castaneda supplied methamphetamine as part of a conspiracy run by Joseph Kujawa. According to Kujawa, Castaneda transported 15 to 20 pounds per month of pure methamphetamine from California to Minnesota for one year, providing 5 pounds per month directly to Kujawa. Other coconspirators, bank statements, and flight and rental-car records corroborate Kujawa's story. In February 2016, one pound of methamphetamine was seized from coconspirator Jamie Pankow; testing revealed that it was 100% pure.

Castaneda admits that he personally transported six pounds of methamphetamine, but he maintained at sentencing that he otherwise transported only marijuana. He insisted, at odds with Kujawa's statements, that he did not know that any packages he delivered contained methamphetamine until, near the end of his involvement, a coconspirator accused him of tampering with them. In total, Castaneda testified that he transported just six one-pound packages of methamphetamine and delivered all of them to someone other than Kujawa.

Castaneda was the twentieth and final conspirator to be sentenced. The district court expressly pinned his coconspirators' offense levels on their involvement with various

quantities of a mixture or substance containing methamphetamine, but Castaneda's sentencing went differently. For his base offense level, the court entertained his insistence that he personally transported no more than six pounds of methamphetamine—but found that this conduct involved nearly three kilograms of *Ice*, rather than a mere mixture or substance containing methamphetamine. This was more than the 1.5 kilograms of Ice necessary for a level of 36. *See* U.S.S.G. § 2D1.1(c)(2).

At the same time, the court found that Castaneda did not qualify for a downward adjustment for accepting responsibility under § 3E1.1, precisely because he asserted that he transported methamphetamine only occasionally—an assertion that the court determined was implausible in light of the other evidence.

After further adjustments, the court concluded that Castaneda had a total offense level of 39, which, with a criminal history category of II, resulted in a Guidelines range of 292 to 356 months' imprisonment. *See* U.S.S.G. Ch. 5, Pt. A. The court then noted that Castaneda's conduct was "more or less in parity" with Kujawa's, but that Kujawa had accepted responsibility and cooperated with the government. To avoid unwarranted disparities between Castaneda and his coconspirators, the court sentenced Castaneda to 20 years' imprisonment: 2 years more than Kujawa's term, but 52 months below Castaneda's Guidelines range.

## II. Analysis

Castaneda first contends that the district court erred by basing his sentencing range on a drug substance (Ice)

inconsistent with that used to calculate his coconspirators' ranges: had the judge determined that Castaneda's conduct, like that of his coconspirators, involved a mixture or substance containing methamphetamine, the result would be a lower base offense level. This argument assumes, of course, that Castaneda's drug *quantity* should remain less than the 15-kilogram amount that triggers a level of 36 for mixture-or-substance crimes.

Because Castaneda did not raise this concern about his co-conspirators at sentencing, our review is for plain error. *See Molina-Martinez v. United States*, 136 S. Ct. 1338, 1342–43 (2016); FED. R. CRIM. P. 52. Remand is warranted only if the district court's error is clear and affected Castaneda's substantial rights, and if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Molina-Martinez*, 136 S. Ct. at 1343. Typically, an error affects a defendant's substantial rights if it is reasonably probable that, but for the error, the outcome of the proceeding would have been different. *United States v. Dominguez Benitez*, 542 U.S. 74, 81–82 (2004). And the Supreme Court has recently stressed that in the typical case, straightforward errors in calculating the Guidelines range will amount to plain error. *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1903 (2018). But there is no straightforward error here.

To start, the evidence, viewed apart from the base offense levels of Castaneda's coconspirators, suffices to support the district court's finding of more than 1.5 kilograms of Ice. We start with the quantity. Kujawa testified that from May 2015 to May 2016, Castaneda brought 15 pounds of methamphetamine per month to Minnesota and fronted 5 pounds per

month to Kujawa. Seven other witnesses (including Castaneda's drivers and some coconspirators), bank statements, and travel records corroborated Kujawa's version. Even Castaneda admits that he personally transported 6 pounds of methamphetamine—*i.e.*, 2.72 kilograms.

The drug-substance finding of Ice likewise finds support in the evidence. For instance, the pound of methamphetamine seized from a coconspirator was 100% pure. Meanwhile, Kujawa testified under oath that Castaneda delivered methamphetamine in crystal form that looked like glass "shards," while bragging about the methamphetamine's purity: "[i]t's the best stuff you can get. It's uncut." Two other coconspirators confirmed that Castaneda delivered methamphetamine that looked like "glass shards," a hallmark of the drug's purity. Thus, the evidence permits an extrapolated finding that Castaneda is responsible for at least 1.5 kilograms of Ice.

But, says Castaneda, context—specifically, a district court's treatment of coconspirators—matters at sentencing. And we have said that a district court may err when, without justification, it finds that one coconspirator is responsible for a greater quantity of a particular drug than his fellow conspirators. *See United States v. Barnes*, 602 F.3d 790, 796–97 (7th Cir. 2010); *United States v. Taylor*, 600 F.3d 863, 871–72 (7th Cir. 2010). By analogy, Castaneda reasons, it is unfair to hold him responsible for a more-penalized substance than his coconspirators—even if the evidence, viewed in isolation, would otherwise support a finding that the drug Castaneda handled was Ice.

Yet Castaneda, unlike the defendant in *Barnes*, was not found responsible for a greater quantity of drugs than most

of his coconspirators. While the court confined Castaneda's relevant conduct to 3 kilograms of Ice, that amount of Ice produces the same base offense level (36) as "at least 15 kg but less than 45 kg" of a mixture or substance containing methamphetamine. *See* U.S.S.G. § 2D1.1(c)(2), Notes to Drug Quantity Table, Note (A). And six conspirators received drug-quantity findings at or above 15 kilograms of a mixture or substance containing methamphetamine. For example, the district court found Kujawa responsible for 58 kilograms, corresponding to a base offense level of 38. The district court noted, too, that in the coconspirators' cases, the record supported a "backup finding" that much of the substance involved was Ice. But, given the large drug quantities for these coconspirators, at their sentencing hearings the court did not see a need to decide, once and for all, how much of it was Ice.

So, it was easy enough to evaluate these codefendants' relevant conduct conservatively and still arrive at a base offense level of 36. And regarding Castaneda, the court opined, "I'd be inclined to believe that there is a preponderance of the evidence that would support an amount of ice that's within that range for a level 36." This is equal to the base offense level of 36 for the conspiracy's first-tier wholesalers.

Indeed, the court found that Castaneda was the "pipeline" of the drug operation and so was "more or less in parity" with Kujawa, who received a base offense level of 38 for a drug quantity of 58 kilograms of a mixture or substance containing methamphetamine. At the other end of the spectrum, the drug amount for a mere third-tier distributor in the conspiracy was 5.5 kilograms of a mixture or substance containing methamphetamine. Against that backdrop, it would be odd

to find that Castaneda's relevant conduct involved just three kilograms of a mixture or substance containing methamphetamine.

In sum, Castaneda is not asking for equal treatment. Instead, he asks to be sentenced using the same drug substance as his coconspirators, but with the benefit of a drug quantity lower than the ones attributed to all but five of the second- and third-tier street distributors. *Barnes* does not reach that far. On these facts, the decision not to treat Castaneda identically with his coconspirators did not plainly make a difference to his sentencing range or impair the fairness or integrity of the proceedings. *See Dominguez Benitez*, 542 U.S. at 82–83.

Next, Castaneda contends that the district court acted inconsistently in denying him a reduction for acceptance of responsibility. Specifically, the finding that his relevant conduct involved 3 kilograms of Ice was in tension with the finding that Castaneda supplied the Kujawa conspiracy—which, after all, distributed more than 58 kilograms of methamphetamine. Given the small quantity that informed his base offense level, he asks, how could he be held accountable for not admitting to the large-scale version of the conspiracy described by Kujawa?

This argument is mistaken. The district court found that Castaneda's relevant conduct "*conservatively* involved at least 3kg of ice" (emphasis added). And Castaneda admitted distributing, as the court saw it, "*minimally*, 3 kilograms of controlled substance" (emphasis added). These findings set the floor, not the ceiling, for how much methamphetamine Castaneda might have supplied as part of the conspiracy. The court's willingness to pin Castaneda's base offense level on a

minimum of 3 kilograms of methamphetamine is not necessarily inconsistent with the possibility that Castaneda served as the source of supply for the Kujawa conspiracy and provided more than he said. So, the district court's findings were not fatally inconsistent and do not constitute clear error.

A defendant is not entitled to the reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility if he falsely denies or frivolously contests relevant conduct that the district court determines to be true. *See id.* at cmt. 1(a); *United States v. Taylor*, 72 F.3d 533, 550 (7th Cir. 1995). It is the defendant's burden to show acceptance, *see United States v. Smith*, 860 F.3d 508, 516 (7th Cir. 2017), and here, Castaneda did not shoulder that burden. He denied that he acted as the conspiracy's source of supply, claiming that he was an unwitting driver of drug packages (content unknown) and did not realize he was moving methamphetamine until the last trip. Although the court's drug-quantity finding was not as severe as it could have been, the court made plain that it did not credit Castaneda's relatively innocent portrayal of his overall role.

To be sure, Castaneda cites *United States v. Eschman*, 227 F.3d 886, 891 (7th Cir. 2000), where we found clear error in a district court's decision to deny any discount for acceptance of responsibility when the defendant contested the drug amount but otherwise showed remorse and did not actively deny other relevant conduct. But in *Eschman*, only pseudoephedrine (not methamphetamine) was seized, and the district court's extrapolation of the amount and purity Eschman would have made from it was quite speculative. *Id.* at 888–90. Here, by contrast, one pound of the substance charged in the offense was seized and, upon testing, was

found to be 100% pure methamphetamine. Meanwhile, although Kujawa's narrative differed sharply from Castaneda's, it was corroborated by other sources. In light of all the evidence and the district court's findings, Castaneda was not entitled to insist on a minimal role for himself while still receiving credit for accepting responsibility.

For these reasons, the district court's judgment is AFFIRMED.