In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 23-2370

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JACK A. CLAYBORNE,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 18-cr-00109 — **Pamela Pepper**, *Chief Judge.*

_____

ARGUED MAY 20, 2024 — DECIDED JUNE 27, 2024

_____

Before FLAUM, BRENNAN, and KOLAR, *Circuit Judges.*

FLAUM, *Circuit Judge.* Jack Clayborne was convicted of crimes arising out of an attempted carjacking. He challenges his sentence on two grounds, arguing that either requires re-sentencing. Finding neither argument persuasive, we affirm.

## I.  Background

### A.  Factual Background

When Michael Guster exited his vehicle after parking it in his garage, three men attempted to carjack him. First, Eric Booker approached with a gun, shouting at Guster. Then, Jack Clayborne—the defendant in this case—walked up and fired five shots. One bullet hit Guster, traveling through both his legs. Guster, a concealed carry permit holder, returned fire, striking Booker in the torso. Clayborne fled, but Sylvance Brown, who was waiting nearby as a getaway driver, took Booker to the hospital. Clayborne remained at large for nearly two years before being apprehended.

### B.  Procedural Background

In time, Clayborne was charged with attempted motor vehicle robbery in violation of 18 U.S.C. § 2119(2), discharge of a firearm during an attempted robbery in violation of 18 U.S.C. § 924(c)(1)(A), and possession of a firearm and ammunition by a felon in violation of 18 U.S.C. § 922(g)(1). Booker and Brown, who were both convicted for their participation, testified at Clayborne's trial that carjacking Guster was Clayborne's idea.

A jury found Clayborne guilty on all counts, and the district court sentenced him to 234 months' imprisonment, 120 months of which corresponded to the § 924(c)(1)(A) conviction. At sentencing, the district court denied Clayborne an acceptance of responsibility reduction under the Sentencing Guidelines because Clayborne had not admitted to his crimes. *See* U.S.S.G. § 3E1.1.

Clayborne appealed his sentence, and we remanded for resentencing after the government agreed to dismiss his § 924(c)(1)(A) conviction in light of *United States v. Taylor*, 596 U.S. 845 (2022).

In advance of resentencing, Clayborne submitted a letter to the district court, expressing regret for his actions. The district judge considered the letter but found it insufficient to warrant an acceptance of responsibility reduction. At the resentencing hearing she remarked, "I hate to use that hackneyed expression 'too little too late,' but I think that [the letter] is."

Then, when explaining the factors motivating her sentencing decision, the district judge noted:

> The guidelines are as high as they are for a reason, and part of that's your past history, which I commented about [at the first sentencing]. It's not necessarily—You don't have 17 [criminal history] points because you committed homicides and sexual assaults, some of it's robbery, a lot of it's robbery.

Clayborne was resentenced to 223 months in prison, eleven months fewer than his previous sentence, and appealed once more.

## II.    Discussion

Clayborne challenges two aspects of his sentence: (1) the district court's decision not to award him an acceptance of responsibility reduction, and (2) the district court's comment that his criminal history included "a lot of" robberies when he had no prior robbery convictions.

### A.  Acceptance of Responsibility Reduction

We review de novo whether the district court committed procedural error by "failing to explain adequately" its decision to deny an acceptance of responsibility reduction. *United States v. Smith*, 860 F.3d 508, 514 (7th Cir. 2017). If its explanation was sufficient, we review for clear error its factual decision not to award a criminal defendant the reduction. *United States v. Robinson*, 942 F.3d 767, 770 (7th Cir. 2019). The bar is high. To reverse, we must be left with "the definite and firm conviction that a mistake has been made." *Id.* (citation omitted).

"A sentencing court errs procedurally when it fails to explain adequately the chosen sentence." *United States v. Shoffner*, 942 F.3d 818, 822 (7th Cir. 2019). However, there is no bright-line rule about "when [courts] have said enough." *Id.* (citation omitted). The touchpoint is whether the record is sufficient to permit the reviewing court "to discern the considerations which motivated the district court's sentencing decision." *United States v. Garcia-Oliveros*, 639 F.3d 380, 382 (7th Cir. 2011) (remanding for resentencing "[i]n light of the sentencing judge's complete silence"). When the record is "too thin" to allow review, the sentencing court committed procedural error and resentencing is necessary. *Id.*

No procedural error occurred in this case. Contrary to Clayborne's contention, the sentencing court did much more than conclude his letter was "too little too late." Context is important. *See Shoffner*, 942 F.3d at 822. The court explained that at Clayborne's first sentencing he offered "a fairly full-throated denial" of the offense conduct. Although the court recognized the letter Clayborne submitted in advance of resentencing was "a different sentiment" than he expressed at

his first sentencing, the letter "carefully tread[ed] around whatever it [was] that Mr. Clayborne [was] apologizing for." While the court appreciated Clayborne's expression of remorse, it nonetheless concluded the letter was "a far cry" from what was necessary to warrant an acceptance of responsibility reduction.

This is not a case where the district court failed to "reveal either a factual or a legal basis to support [its decision]" and left us with no reasoning at all to review. *Smith*, 860 F.3d at 517; *see also Garcia-Oliveros*, 639 F.3d at 382. It is abundantly clear from the sentencing transcript what the district court believed was missing from Clayborne's letter: his truthful admission of the offense conduct. *See Smith*, 860 F.3d at 516.

Because the district court adequately explained its reasoning, it did not commit procedural error, and we turn to whether its decision not to award an acceptance of responsibility reduction was clearly erroneous. Clayborne argues that it was because the decision was founded on the erroneous belief that his letter was "too little" and "too late." We take each point in turn.

### 1. Admitting Offense Conduct

The district court did not clearly err in finding that Clayborne's letter was substantively insufficient to justify an acceptance of responsibility reduction.

Guideline § 3E1.1, Application Note 1, offers eight non-exhaustive considerations when determining if an acceptance of responsibility reduction is appropriate. Clayborne's appeal centers on one: whether Clayborne "truthfully admit[ted] the

conduct comprising the offense(s) of conviction." § 3E1.1, cmt. n.1(a).

The acceptance of responsibility reduction is intended to benefit defendants who "clearly accept responsibility for the conduct comprising [their] offense of conviction." *United States v. Hammick*, 36 F.3d 594, 598–99 (7th Cir. 1994) (affirming denial of acceptance of responsibility reduction where the district court found the defendant failed to provide "a candid and full unraveling" of his offense conduct (citation omitted)). While the defendant need not admit to additional relevant conduct, the sentencing judge is free to "requir[e] the defendant to provide a complete and credible explanation of the conduct involved in the offense of conviction itself." *Id.* at 599. Judges also have discretion to award an acceptance of responsibility reduction only to defendants who "forthrightly avow[] responsibility for [their] crime." *Id.* at 600.

For example, in *United States v. Ghuman*, the district court denied the defendant an acceptance of responsibility credit in part because he "failed to admit his central role in the bank fraud scheme." 966 F.3d 567, 572 (7th Cir. 2020). We affirmed. While Ghuman "acknowledged his participation in the overall scheme to defraud the bank," he "affirmatively downplayed his role in the … scheme and denied culpability for certain aspects of the fraud." *Id.* at 573. The district court's conclusion that Ghuman failed to "fully acknowledge[] either his degree of culpability or the scope of harm that his actions … caused" was not a clearly erroneous basis for denying the acceptance of responsibility reduction. *Id.* at 574.

While Clayborne expressed remorse, his letter lacked specificity. He said he was sorry "for the events that

transpired" but did not describe the events. He apologized "for the damage" he did to Guster but did not identify what he did that caused damage. He admitted he "was wrong for participating in this offense" but failed to specify the extent of his participation. The lack of specificity in Clayborne's letter left open the possibility that he accepted responsibility for only a fraction of the offense conduct. Sentencing judges have the prerogative to require more transparency from defendants.[1]

This lack of detail is especially salient for the same reason it was in *Ghuman*. Both defendants argued that another person was responsible for their crimes. *Id.* at 576. At trial, Clayborne denied participating in the attempted carjacking, arguing he did not match the shooter's description, but Brown did. That strategy extended to his "fairly full-throated denial" at his first sentencing where he maintained he was not the shooter, even if there was "a good argument that [he] was somewhere on the crime scene." "[B]laming someone else for one's own actions or minimizing one's involvement in the offense is not the sort of genuine contrition the acceptance of responsibility reduction seeks to reward." *United States v. Ali*, 619 F.3d 713, 720 (7th Cir. 2010).

---

[1] Clayborne argues that the lack of detail in his letter should be excused given his limited education. But Clayborne is a native English speaker who obtained a High School Equivalency Diploma. Most important, the district court remarked during sentencing that Clayborne was "very intelligent" and expressed himself very well—information it gleaned over repeated interactions in Clayborne's criminal case and several lawsuits he filed. That factual conclusion is not clearly erroneous, so we cannot disturb it. *See United States v. Suarez*, 225 F.3d 777, 779 (7th Cir. 2000).

*2. Timing of Clayborne's Letter*

Clayborne separately takes issue with the district court's comment that his letter was "too late." He argues that the court's denial of the reduction was premised on its mistaken belief that acceptance of responsibility manifested before resentencing—but not before the defendant's first sentencing—is insufficient to justify the reduction.

Clayborne's legal contention is correct but his interpretation of the district court's reasoning is not. True, district courts presiding over "resentencing may consider evidence of the defendant's postsentencing rehabilitation and that … evidence may … support a downward variance from the … Guidelines range." *Pepper v. United States*, 562 U.S. 476, 481 (2011). But "[a] defendant cannot obtain reversal [of his sentence] merely by identifying statements that appear problematic when taken out of context; a defendant must also show that the judge actually relied on an impermissible factor to arrive at the sentence imposed." *See United States v. Shaw*, 39 F.4th 450, 460 (7th Cir. 2022).

Here, when assessing whether the letter merited a reduction under § 3E1.1, the court's focus was on the insufficiency of its substance. Besides the passing reference to the letter being "too late," the court said nothing indicating that the timing of the apology factored into its decision. The court correctly found the letter was "too little" to justify the reduction so the "hackneyed" expression came to mind to drive home the point.

Moreover, the district court *did* take Clayborne's postsentencing rehabilitation into account, following *Pepper*'s guidance. It did so through the 18 U.S.C. § 3553(a) factors,

remarking that Clayborne's letter, which reflected a "distinct change … in [his] attitude," earned him an eleven-month reduction in his sentence. *Pepper* does not require district courts to consider such evidence specifically for an acceptance of responsibility reduction under § 3E1.1.

On this record, the district court did not clearly err in finding that Clayborne's failure to own up to his offense conduct justified withholding the acceptance of responsibility reduction.

### B. Criminal History

Clayborne's second challenge centers on the district court's statement that his criminal history included "a lot of … robbery" when he had no prior robbery convictions. We review de novo Clayborne's argument that the district court erred by relying on this incorrect information when fashioning his sentence. *United States v. Oliver*, 873 F.3d 601, 607–08 (7th Cir. 2017).

Although Clayborne had never been convicted of robbery, his extensive criminal history includes convictions for theft, attempted theft, burglary, and attempted burglary. Many of his prior offenses have similar hallmarks as robbery, a fact the district court recognized at his first sentencing. It remarked that Clayborne "ha[s] [a] history of criminal activity that often involves taking things that don't belong to him, culminating with this crime in which he almost took not only a car that didn't belong to him, but someone else's life."

Identifying a misstatement is not a fast track to resentencing. *See United States ex rel. Welch v. Lane*, 738 F.2d 863, 865 (7th Cir. 1984). Clayborne must identify evidence of reliance, that is, show that the court "gave the misinformation specific

consideration so that [it] formed part of the basis of the sentence." *Id.* at 866 (citation and internal quotation marks omitted); *see also United States v. Jones*, 454 F.3d 642, 652 (2006). While "[t]he standard for determining whether the district court relied on improper information is a low one," resentencing is only warranted if there is evidence "that the judge misapprehended the record with respect to an aggravating factor that the judge considered important." *United States v. Miller*, 900 F.3d 509, 513–14 (7th Cir. 2018) (citation omitted).

There is no evidence of reliance in this case because Clayborne's criminal history had no bearing on the revised sentence the district court fashioned. *See Shaw*, 39 F.4th at 460. At resentencing, the court's focus was on whether Clayborne's sentence should be altered in light of the vacated § 924(c)(1)(A) conviction. Two factors supported Clayborne's original sentence: (1) his criminal history, and (2) his attitude, in denying his involvement in the crimes. Pondering an appropriate revised sentence, the court explained that little had changed since Clayborne's first sentencing. Most importantly, it remarked, "nothing's changed with regard to Mr. Clayborne's criminal history, that's all the same as it was in the prior sentencing." The only change was Clayborne's contrite attitude, reflected in his letter. The district court explained that warranted a slightly shorter term of incarceration. Far from giving "explicit attention" or "specific consideration" to Clayborne's prior offenses, *Miller*, 900 F.3d at 513, the court at resentencing focused on the only factor that changed and therefore mattered: Clayborne's expression of remorse.

What is more, we are unconvinced that the court's reference to robberies reflects genuine misunderstanding. Given the district court's accurate description of Clayborne's

criminal history at his first sentencing and the familiarity it demonstrated with Clayborne's case throughout his resentencing, this reference appears to have been inartful shorthand for the general nature of Clayborne's past convictions. *See United States v. Kanan*, No. 21-1755 & 21-1756, 2022 WL 2255863, at *2 (7th Cir. June 23, 2022) ("[I]f a district judge merely misspeaks—rather than bases the sentence on inaccurate information—no deprivation of th[e] right [to be sentenced based on accurate information] has occurred."); *United States v. Nowicki*, 870 F.2d 405, 408 (7th Cir. 1989).

In any event, it is clear that the district court did not base Clayborne's sentence on an erroneous belief that he had committed prior robberies.

### III.    Conclusion

For these reasons, we AFFIRM.