In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-2787

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DARRELL W. JONES,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 CR 9 — **Charles R. Norgle, Sr.**, *Judge.*

ARGUED MARCH 31, 2015 — DECIDED AUGUST 19, 2015

Before KANNE and ROVNER, *Circuit Judges,* and
SPRINGMANN, *District Judge.*[*]

KANNE, *Circuit Judge.* Defendant Darrell Jones was sentenced to eighteen months in prison and five years of super-

---

[*] The Honorable Theresa L. Springmann, of the United States District Court for the Northern District of Indiana, sitting by designation.

vised release for failure to register as a sex offender. On appeal, he claims the district court ignored his arguments in mitigation and imposed unwarranted conditions of supervised release. We disagree and affirm Jones's sentence.

## I. BACKGROUND

*A. Jones's Criminal History and Offense of Conviction*

In the mid-1980s, when Jones was a young adult living in Florida, he repeatedly sexually abused a young girl under the age of twelve. Their exact ages are unclear from the record, but the government says he was 21 and she was 10 at the time. The victim was a relative of his wife (now ex-wife). Jones's mother-in-law found him half-naked on top of the girl and reported the incident to the police. The victim later told the police that Jones had sexually assaulted her six to eight times during the preceding year. In 1988 Florida brought charges, and Jones pled guilty to three counts of attempted sexual battery. He was sentenced to 12 years in prison plus 10 years of probation.

Jones was released from prison in 1994 after serving roughly half his sentence. (The reason for his early release is unclear.) As a result of his convictions, he had a lifelong obligation to register as a sex offender under the Sex Offender Registration and Notification Act ("SORNA") and to update his registration whenever he moved. *See* 42 U.S.C. §§ 16913 and 16915. After his release, he complied with his registration obligation—with one exception discussed below—through 2010. He had no further sex-offense convictions, and he found employment at a funeral home. These were steps in the right direction.

Unfortunately, however, he continued to have problems. One of his probation conditions required him to undergo sex-offender treatment. Jones began the prescribed program, but was terminated in 1996 for refusal to participate and continued denial. He never completed treatment—in violation of his probation. What he did instead was rack up more criminal convictions: for trespass, destruction of property, and unauthorized use of an automobile in 1988 (in Virginia); and for domestic battery in 2000 (in Florida).[1] To compound matters, he did not report his domestic-battery arrest to his probation officer—a further probation violation.

A Florida court sent Jones back to prison in 2000 to serve concurrent sentences for his probation violations and the domestic-battery conviction. Jones reports that at some point during his incarceration, he twice attempted to commit suicide by hanging himself. He survived both attempts, and in late 2000 he was released from prison again.

As before, Jones took some steps in the right direction. He completed courses at a Bible college, where he earned a doctoral degree in the humanities in 2010. (He already had a bachelor's degree from Florida State University.) He became a licensed, ordained minister in Virginia. And he worked on-and-off as a funeral attendant, lead-pipe layer, and pastor.

But despite these positive steps, Jones's legal problems also continued. In 2001 Jones was convicted for failing to register as a sex offender in Virginia. He was also convicted of several other crimes: driving with a suspended license (once

---

[1] He also had an earlier conviction for grand theft in Florida in 1984—before the sexual assaults. He received a sentence of probation but later violated his conditions and had his probation revoked.

in 2003 and twice in 2009), threatening another person (in 2004), failure to pay child support and failure to appear in court (in 2007), and the assault and battery of a coworker (in 2005).

Then began the series of events that led to Jones's instant offense of conviction and this appeal. In late 2010, after years of registering as a sex offender (with the one exception in 2001), Jones suddenly stopped. In March 2011, Virginia issued a warrant for his arrest. In the fall of 2011, he moved to Chicago, where his fiancée had a job. He did not register as a sex offender in Illinois. He continued living and working in the Chicago area, initially at a funeral home and then, after being laid off, as a volunteer pastor. During all that time, Jones did not register as a sex offender.

He was arrested in 2013. A federal grand jury returned an indictment charging that for over a year Jones had knowingly failed to register, as required by SORNA, in violation of 18 U.S.C. § 2250(a). Jones entered a "naked" guilty plea.

*B. The First Sentencing Hearing*

The probation office issued a presentence report ("PSR") detailing Jones's criminal history and calculating an advisory guidelines range of 18 to 24 months' imprisonment (which is undisputed). Probation recommended 15 months in custody and 5 years of supervised release, subject to the standard conditions plus fifteen special conditions listed in the PSR.

The district court held a sentencing hearing on May 21, 2014. It first heard argument on the proposed supervised-release conditions. Jones's counsel objected to two conditions authorizing sex-offender treatment, arguing that 26 years had passed since his underlying sex offenses. But the court noted

that Jones never completed his prior treatment regimen. Moreover, the conditions simply permitted probation to evaluate Jones to determine whether treatment was necessary—they did not mandate it. The court approved the conditions.

It also approved conditions restricting Jones's employment and requiring him to provide financial information to his probation officer. The government claimed these were necessary so it could monitor Jones and "make sure that he is not involved in doing anything that could come close to … child sex offenses." The court agreed, adding that the restriction was "not an unusual provision." The court's ruling on two other conditions limiting Jones's contact with minors was unclear—it first sustained and then overruled his attorney's objections. Both sides agreed to strike the remaining eight conditions (which would have limited access to electronics and pornography), so the court rejected them.

Moving to the issue of Jones's incarceration, the government requested a sentence in the middle of the guidelines range. It emphasized the heinousness of Jones's prior sex offenses and argued that his failure to register undermined the very purpose of SORNA, which is to allow effective supervision of violent sex offenders. Jones argued for a 6-month prison term, emphasizing the absence of any sex-offense convictions since he committed the underlying crimes. This, his attorney said, showed a low risk of recidivism. She claimed Jones was trying to "get[] his life back on the right track." At that point, the court interjected: "But he doesn't work," despite being $11,000 in arrears on child-support payments. The court also observed that this was not Jones's first failure to register. His counsel contested that point, but after direct and

cross-examination of Jones, the court made a finding that he did not in fact timely register in 2001.

Jones himself made a statement as well. "Since my release from prison in 1994," he told the court, "I have tried to be a productive and law-abiding citizen … . I have done my best." He claimed he was "not a man of malicious intent" or "full of excuses," but rather "a man of God."

After hearing the arguments, the district court expressly adopted the PSR's findings. The court also noted that the PSR "discusses the 3553 factors. And we have again discussed the 3553 factors today." But apart from those references, the court did not walk through the factors in its pronouncement of the sentence. It acknowledged Jones's "remorse" and that Jones "advise[d] the Court that he is a changed person, and that there is no concern about his future conduct." The court nevertheless concluded there was "no reasonable basis to depart" from the guidelines. Instead, it sentenced him to 18 months' imprisonment, at the bottom of the advisory range.

*C. The Second Sentencing Hearing*

At the request of counsel, the court continued the hearing to June 6, 2014, to provide clarification on some of its rulings. Before that date arrived, on May 29, we issued our opinion in *United States v. Siegel*, which emphasized the need to justify conditions of supervised release with reference to the applicable § 3553(a) factors. 753 F.3d 705, 717 (7th Cir. 2014). In light of *Siegel*, the district court requested a supplemental PSR and allowed both sides to supplement their prior submissions. With input from the supervisor of the sex-offender unit, the

probation office proposed seven special conditions. Jones objected to all but one.[2]

The court held a second hearing on July 30, 2014, regarding the supervised-release conditions. Both sides offered extensive argument covering much of the same ground as before, but in greater depth and with discussions of the relevant case law. The district judge was engaged in the arguments and frequently posed questions. Ultimately, the court adopted all of the proposed special conditions (with some modifications).[3]

The first two conditions require Jones to "participate in a mental health and/or sex offender treatment program as directed by the probation officer," and to "comply with all recommended treatment." Two others apply to Jones's contact with minors. One prohibits contact "other than while visiting commercial businesses or as a result of incidental and unintentional contact," and another forbids volunteer activities that may bring him into "direct contact with children except under circumstances approved in advance." The remaining conditions allow the government to monitor Jones's daily activities. One restricts his employment and requires him to seek his probation officer's approval before changing jobs. The other requires him to provide copies of financial information to his probation officer.

The premise behind all of these conditions is that Jones poses a risk—in other words, that there is a danger he will

---

[2] The undisputed condition simply requires Jones to register as a sex offender, which, of course, he must do already under federal law.

[3] The court also imposed the "standard" conditions of supervised release. Jones does not challenge the standard conditions on appeal.

commit another sex offense. That is what the government argued, pointing to the seriousness of his prior sexual assaults against a minor, his subsequent refusal of treatment, and his sudden failure to register, which in the government's view raised a red flag. Jones's counsel, on the other hand, insisted again that he was "not at a risk of recidivism."

The court found the government's argument more persuasive. It also gave "substantial weight" to the "comprehensive" PSR and the probation officer's assessment regarding "the needs of the defendant and the risks posed to the community," particularly because the supervisor of the sex-offender unit had helped craft the proposed conditions. At the close of the hearing, the government's attorney asked the court to confirm that in addition to the PSR, it was "also relying on the 3553(a) factors." The court responded, "Yes, indeed … . I have considered the 3553 factors."

## II. ANALYSIS

Jones contends that the district court gave inadequate consideration to his principal arguments in mitigation, and that the court insufficiently tailored his supervised-release conditions. We consider each argument in turn.

### A. Jones's Mitigation Arguments

We review *de novo* whether the district court committed any procedural error during sentencing. *United States v. Spiller*, 732 F.3d 767, 769 (7th Cir. 2013). We held in *United States v. Cunningham* that a sentencing judge must address the defendant's principal arguments in mitigation unless they have no legal merit. 429 F.3d 673, 67879 (7th Cir. 2005). We have applied the *Cunningham* standard many times. *See*

*United States v. Castaldi*, 743 F.3d 589, 595 (7th Cir. 2014) (collecting cases). As our cases illustrate, that standard "does not apply mechanically or without regard to context." *United States v. Poetz*, 582 F.3d 835, 839 (7th Cir. 2009). "A short explanation will suffice where the context and record make clear the reasoning underlying the district court's conclusion." *United States v. Shroeder*, 536 F.3d 746, 755 (7th Cir. 2008). And we generally require less explanation when the court sentences within the guidelines range. *United States v. Curby*, 595 F.3d 794, 797 (7th Cir. 2010). So long as the record gives us confidence that the court meaningfully considered the defendant's mitigation arguments, "even if implicitly and imprecisely," that is enough. *United States v. Diekemper*, 604 F.3d 345, 355 (7th Cir. 2010) (citing *Poetz*, 582 F.3d at 839). But a "rote statement that the judge considered all relevant factors will not always suffice." *Cunningham*, 429 F.3d at 679.

Some of the court's comments here, taken in isolation, look fairly rote. The court stated toward the end of both hearings that it had considered the § 3553(a) factors, but did so without much explanation and, at the second hearing, only when prompted by the government. Moreover, when pronouncing the sentence, the court summarized Jones's mitigation arguments only briefly and without analysis.

Looking at the record as a whole, however, we are confident that the court meaningfully considered all three of the mitigation arguments that Jones highlights on appeal: (1) that he had "worked hard to put his life on the right track through education, previous employment, and volunteer work"; (2) that he registered as a sex offender on multiple occasions from 1994 until 2010; and (3) that he committed the underlying sexual assaults 26 years ago.

The facts about Jones's work and education, his compliance with the registration requirement, and the dates of his offenses were all laid out in the PSR, which the court reviewed before both hearings and on which it placed substantial weight. Jones further argued these points in his sentencing memorandum, which the court also reviewed. And the parties covered this ground again in considerable detail during the two hearings. The court was well aware of Jones's arguments.

Moreover, it is clear that the court considered those arguments in making its decision. The court questioned Jones and his counsel directly about his work history, though it focused more on how long Jones had been *unemployed*. The court also expressly acknowledged Jones's claim that he was "a changed person" who presented no risk. The court asked about Jones's past registration as a sex offender, though it found his prior *failure* to register more important than his instances of compliance. And the court engaged in the arguments about the length of time since Jones's sex offenses, often interrupting with questions. In short, the court considered Jones's arguments; it simply found them unpersuasive.

It is true that the court did not directly explain *why* it found them unpersuasive. The record would have been clearer and this appeal more straightforward had the court done so. But, all the same, we find no procedural error. We can discern the court's rationale from its questions, comments, and decisions, and from its responses to both sides' lengthy arguments. The court considered and discussed the most pertinent § 3553(a) factors—Jones's history, characteristics, and character, as well as the issue of whether he still posed a danger to society. And it expressly determined that the guidelines

range was reasonable in this case. In doing so, the court meaningfully considered and rejected, even if "implicitly and imprecisely," the facts and arguments that Jones advanced in support of his sentencing position. *Diekemper*, 604 F.3d at 355.

*B. The Supervised-Release Conditions*

18 U.S.C. § 3583 governs the imposition of supervised release. For certain crimes, supervised release is mandatory; for others, the sentencing court has discretion to impose it— within bounds defined by the statute. 18 U.S.C. § 3583(a), (b). This is a case where supervised release was mandatory for a period of at least five years. *See id.* § 3583(k) (requiring supervised release for violators of 18 U.S.C. § 2250). In determining the length and conditions of supervised release (and in deciding whether to impose it at all in cases where it is not mandatory), a court must consider the same § 3553(a) factors that guide sentencing determinations generally. 18 U.S.C. § 3583(c). Excluded from that list, however, is § 3553(a)(2)(A), the need for "just punishment." *Id.* For the goal of supervised release is primarily to prevent recidivism and foster the offender's re-entry into society; not to punish. *See United States v. Thompson*, 777 F.3d 368, 374 (7th Cir. 2015); *Siegel*, 753 F.3d at 708.

If a statute mandates supervised release (or, where it does not, if the court determines supervised release is appropriate), § 3583(d) makes certain conditions mandatory. Additional conditions may also be mandatory by operation of other applicable statutes, e.g., 18 U.S.C. § 3624(e). But the court has discretion to impose a wide range of non-mandatory conditions as well. Whether they go by the name "standard," "discretionary," "special," or something else, non-mandatory conditions must comply with three statutory requirements. They

must: (1) be "reasonably related" to the defendant's character-
istics, the nature of the offense, and the goals of supervised
release; (2) "involve[] no greater deprivation of liberty than is
reasonably necessary" to accomplish those goals; and (3) be
consistent with any pertinent sentencing policy statements. 18
U.S.C. § 3583(d)(1)-(3). Furthermore, the court must "give a
reason, consistent with the sentencing factors in section
3553(a)," for its decision to impose the conditions it chooses.
*United States v. Bryant*, 754 F.3d 443, 445 (7th Cir. 2014); *see also*
18 U.S.C. § 3553(c).

We review a district court's imposition of non-mandatory
conditions of supervised release for abuse of discretion,
*United States v. Baker*, 755 F.3d 515, 523 (7th Cir. 2014), though
we examine *de novo* claims of procedural error, *United States v.
Poulin*, 745 F.3d 796, 800 (7th Cir. 2014).

District courts have not always applied the statutory re-
quirements when imposing supervised-release conditions.
*See Siegel*, 753 F.3d at 708 (identifying "serious problems with
how some district judges are handling discretionary condi-
tions"). So, in a series of recent opinions, including *Siegel*,
*Thompson*, and *United States v. Kappes*, 782 F.3d 828 (7th Cir.
2015), we have emphasized the importance of following
proper procedures and have given additional guidance to
sentencing judges.

We commend the district judge here for employing the
"best practice" we recommended in *Kappes*: giving the liti-
gants advance notice of the proposed conditions. *See id.* at 842.
The court ordered a supplemental PSR setting forth the pro-
posed conditions and the rationale for each one, and it solic-
ited additional memoranda from Jones and the government.
It then held a second hearing specifically on the proposed

conditions. These steps allowed for a full and fair airing of the issues.

But that was not enough to satisfy the defendant-appellant Jones. He contends on appeal that the district court imposed conditions that are not "appropriately tailored" to his particular offense and characteristics. *See Kappes*, 782 F.3d at 847–48. All of the challenged conditions relate back to Jones's prior sex offenses in the 1980s, and they assume there is a risk that he will commit similar offenses again. Preventing such offenses is certainly one of the purposes of supervised release. *See* 18 U.S.C. §§ 3583(d)(1), 3553(a)(2)(C). But Jones says the notion that he poses a present danger is unreasonable.

First of all (the argument goes), he stands convicted of merely failing to register—not sexually assaulting anyone or committing a similar crime. The problem with Jones's argument is that his conditions do not have to be tied to the specific offense of conviction, so long as they are warranted by the defendant's history and characteristics. *See United States v. Evans*, 727 F.3d 730, 735 (7th Cir. 2013).

But do Jones's history and characteristics in fact warrant the conditions imposed here? In asking that question, we focus on the person he was at the time of sentencing—not the person he was in the distant past, although obviously the two are related. *See id.* at 733–34. The trouble for the government is that Jones committed the underlying sex offenses over 26 years ago. In *United States v. Baker*, we upheld a treatment condition like Jones's based on sexual offenses just as old as his. 755 F.3d 515, 527–28 (7th Cir. 2014). But in that case there was also a more recent incident: several years before sentencing, Baker had been fired for taking two teenage girls to the back of a restaurant and asking them sexual questions. *Id.* at 519;

*see also Evans*, 727 F.3d at 735 (observing that the defendant had "recent and still-untreated sexual offenses"). As far as we know, there is no similar incident in Jones's recent past.

*Baker* and *Evans* recognized that "one way" to establish that a defendant with a history of long-ago sex offenses still poses a danger is to identify a recent instance of sexual misconduct. *Evans*, 727 F.3d at 733. But that is not the only way. We think the district court had sufficient reasons, consistent with § 3553(a), to conclude that Jones still poses a possible danger, even without evidence of any recent sex offenses.

There is, first of all, the severe nature of his prior sex offenses, which involved the repeated rape of a prepubescent girl. It was reasonable for the district court to regard a crime of that nature as indicative of deep-seated problems that are unlikely simply to vanish with time.

Convicted sex offenders tend to recidivate at a higher-than-normal rate. *See McKune v. Lile*, 536 U.S. 24, 33 (2002) (citing relevant studies). And "[m]ental health professionals seem to agree that accepting responsibility for past sexual misconduct is often essential to successful treatment." *Id.* at 68 (Stevens, J., dissenting). But Jones refused to participate in his required treatment program after emerging from prison in 1994. Moreover, he continued to deny that he had a problem nearly a decade after the offenses. That is not the behavior of a rehabilitated man.

Nor does his rap sheet inspire confidence that he has chosen the law-abiding path. After his first release from prison, from 1994 to 1996, he had roughly five criminal convictions (depending on how one counts separate charges). And after

his second release, he had seven more. His convictions include violent crimes in 2000 and 2005. Then, of course, there are the failures to register that led to this appeal. This criminal history makes Jones's statement during the sentencing hearing that he had "done [his] best" since his release from prison all the more troubling. It suggests either that he is in denial about his past conduct, or that "his best" is likely to include future violations of the law.

We also agree with the government's position that Jones's sudden failure to register after years of (mostly) compliance raised a red flag. Although he says he stopped registering because he moved to Chicago, the charges in Virginia actually predate his move by several months. And we see no good reason why the relocation would prevent him from registering. Moving to a new state and simultaneously falling off the radar is suspicious behavior. Maybe it was innocent, but it could just as well have been the first step along the path to reoffending.

The government thought that was a risk, the court thought it was a risk, and so did the probation officer, who continued to recommend imposition of the proposed supervised-release conditions after listening to the arguments during the two hearings. The court placed significant reliance on probation's assessment. This was not, as Jones charges, abdication of the court's responsibility. The court did its own analysis of the sentencing factors. But it appropriately relied on probation's assessment of the danger Jones posed and the needs of the community.

We conclude that Jones's supervised-release conditions are reasonably related to his offense and characteristics and to the

aims of protection and rehabilitation. Therefore, they satisfy 18 U.S.C. § 3583(d)(1).

But the conditions must also cause "no greater deprivation of liberty" than necessary. 18 U.S.C. § 3583(d)(2).[4] We think they meet that standard. Jones's treatment conditions do not strictly require him to participate in a sex-offender or mental-health program. Rather, they authorize the probation office to have him evaluated to determine whether he needs such treatment. The restrictions on his contacts with minors are reasonable too: the one provides exceptions for commercial and unintentional contact, and the other applies only to volunteer activities. And the final set of conditions—concerning Jones's employment and his financial records—allows the government to monitor his activities. The restrictions they place on Jones's liberty are relatively small. Given the risk of recidivism and the importance of monitoring a convicted sex offender with a history of failing to register and other crimes, we find these conditions to be appropriate as well.

### III. CONCLUSION

For the foregoing reasons, Jones's sentence is AFFIRMED.

---

[4] The third requirement, 18 U.S.C. § 3583(d)(3), is not at issue here.