In the

# United States Court of Appeals

## For the Seventh Circuit

No. 18-1310

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

SCOTT B. GRIFFITH,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 4:16-cr-40010-SLD-1 — **Sara Darrow**, *Judge.*

ARGUED NOVEMBER 7, 2018 — DECIDED JANUARY 22, 2019

Before ROVNER, SYKES, and BARRETT, *Circuit Judges*.

ROVNER, *Circuit Judge.* Scott B. Griffith pled guilty to a three-count indictment that charged him with receiving, distributing, and possessing child pornography. The district court sentenced him to 240 months' imprisonment on each count, to run concurrently, as well as a fifteen-year period of supervised release. On appeal, he asserts that the district court

committed procedural error in calculating the guidelines range, and that his resulting sentence is substantively unreasonable. We affirm.

**I.**

Griffith was charged with: (1) receiving four digital images of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(b)(1); (2) distributing three digital images of child pornography (different than those received), in violation of 18 U.S.C. §§ 2252A(a)(2)(A) and 2252A(b)(1); and (3) possessing visual depictions of child pornography in addition to those described in the receipt and distribution counts, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2). In total, Griffith's crimes included 477 photographs and eleven videos of unspecified length. All counts were alleged to have occurred during a three-month period near the end of 2015, and all involved the use of Twitter accounts. Each time Twitter detected child pornography on Griffith's account, the company closed the account and reported the inappropriate activity. Griffith created more than twenty-five Twitter accounts during that three-month period in an attempt to thwart the company's efforts, directing his followers from one account to the next.

Prior to committing these crimes, Griffith, who was fifty-two years old at the time of his arrest, had amassed enough of a criminal history to land him in Category V, only one level below the top of the scale. At the age of twenty, he had sexually abused a child under the age of thirteen, a conviction that was too old to be counted for criminal history purposes. The vast majority of his remaining criminal history was

composed of driving offenses and thefts, some minor and some more serious. Additionally, two women had sought and received orders of protection against Griffith after he threatened them. His criminal record prior to this offense spanned nearly thirty years and a dozen of the previous offenses were either too old or too minor to be included in the calculation of his criminal history.

The Presentence Investigation Report ("PSR")[1] noted that the base offense level for the three grouped counts was 22, citing U.S.S.G. § 2G2.2. An analysis of specific offense characteristics added 18 levels for a total of 40. In particular, the PSR added two levels under section 2G2.2(b)(2) because the material involved a prepubescent minor. Griffith solicited child pornography on his Twitter pages in exchange for access to his own collection, leading to a five-level increase under section 2G2.2(b)(3)(b), for distributing the pictures in exchange for non-pecuniary, valuable consideration, a transaction sometimes called a "peer-to-peer exchange." Four levels were added under section 2G2.2(b)(4)(A) and (B) for material that depicted violence and sexual abuse or exploitation of a toddler. The use of a computer contributed two levels under section 2G2.2(b)(6). Finally, each of the eleven videos was treated as equivalent to seventy-five images which, when added to the 477 photographs, pushed the total images over 600 and added five levels

---

[1] There are two versions of the PSR in the record, an original and a revised version. The revised version includes an addendum that details the defendant's objections to the first PSR and the government's response, as well as some other revisions and recommendations. For the purpose of calculating the offense level and criminal history category, the PSRs are essentially the same. We will note any differences when relevant.

under section 2G2.2(b)(7)(D), for an adjusted offense level of
40. After deducting three levels for acceptance of responsibil-
ity, the PSR set the total offense level at 37. Both versions of the
PSR noted that the guidelines range for a total offense level of
37 and a criminal history Category V is 324 to 405 months'
imprisonment. Both PSRs took the position that Griffith's prior
conviction for sexual abuse qualified him for enhanced
mandatory minimums under 18 U.S.C. § 2252A(b)(1), noting
that the enhanced terms for Counts I and II were fifteen to
forty years. Count III carried a minimum of ten years and a
maximum of twenty years, assuming that the enhanced
penalty applied. The revised PSR incorrectly stated that,
without the enhanced mandatory minimums, the guidelines
range would be 240 months. Neither party noticed that error
until the sentencing hearing, as we discuss below.

Griffith filed a number of objections to the PSR in the
district court, largely falling into three categories. First, he
objected to the application of the "specific offense characteris-
tics" provisions that added eighteen levels to the base offense
level. He contended that the additional levels assessed against
him were based on "arbitrary, unreasonable and unwarranted
sentencing factors which are inherent in the offense of convic-
tion, and patently inconsistent with the purposes of Title 18
U.S.C. Section 3553(a)." R. 18 at 1–2. He complained that the
"rote application" of those provisions "yields a draconian
guideline sentencing range of 324–405 months (27 to 33.75
years)," a result he characterized as "wholly incompatible"
with the section 3553(a) factors and "offensive to the ends of
justice." R. 18, at 2. The crux of Griffith's objection was that

guideline 2G2.2 is fundamentally flawed and that a below-guidelines sentence was warranted:

> In sum, Mr. Griffith's objections to the specific offense characteristics being assessed against him are that the child pornography guidelines, as applied to him on the facts of this case, are excessively harsh and fundamentally incompatible with the §3553(a) sentencing factors. … Accordingly, Mr. Griffith asks [for] a substantial downward variance from the guidelines at the time of sentencing.

R. 18 at 6-7. Griffith's second major objection was that the court should not apply enhanced mandatory minimum terms against him based on his prior criminal sexual abuse conviction under 18 U.S.C. § 2252A(b)(1). The district court agreed with this position, finding that the enhanced mandatory minimum terms did not apply to him, and that issue is not a part of this appeal. Finally, he maintained that Criminal History Category V over-represented his criminal history.

At the sentencing hearing, after resolving the enhanced mandatory minimum issue in Griffith's favor, the district court noted that the statutory range for Counts I and II was five to twenty years, and zero to twenty years for Count III. The court then found that the total offense level was 37, the Criminal History was Category V, and the guidelines range (which had been calculated to be 324 to 405 months) would become 240 months because of the statutory cap for each count. The court asked if the parties concurred "with the Court's recitation as to the applicable statutory and guideline provisions," and both

parties replied, "Yes." R. 37, Sent. Tr. at 19. The court then adopted the revised PSR and its addendum.

After the parties presented argument regarding Griffith's objections and the section 3553(a) factors, the government asked the court to clarify the guidelines range. The government pointed out that because Griffith pled guilty to three separate offenses involving discrete materials, his sentences could run consecutively, meaning there was a sixty-year statutory cap, not a twenty-year maximum. After asking the probation officer to check the calculation, the court announced:

> Yes. The gist is if I ran it consecutively, I could impose a guideline range sentence which would be the 324 to 405 months. In other words, the statutory cap here would be 60 years—…—if run consecutively. I understand that. … Do you want me to refine that? I mean, I think it was—I guess all I'll say is I think it was an error for me to say earlier that the guideline range becomes the statutory cap because they could be run consecutively. … Is that an accurate assessment?

R. 37, Sent. Tr. at 37-38. Defense counsel responded, "Yes." *Id*.

After the defendant made a statement, the court addressed the section 3553(a) factors. In the midst of a thorough discussion of those factors, the court exhaustively addressed Griffith's arguments regarding "the fairness of these guidelines." R. 37, Sent. Tr. at 48. Catering her analysis to the facts of Griffith's offenses, the judge found appropriate the two-level enhancement for material depicting prepubescent children, the five-level addition for peer-to-peer exchange of material, and

the four-level bump for the violence of the images. The court noted that it discounted the two-level enhancement for use of a computer in nearly all cases because it was part of every offense and so "not applying the two-level enhancement in terms of a variance would be appropriate for use of [a] computer." R. 37, Sent. Tr. at 49. On the number of images, the court noted that it lacked information regarding the length of the videos or what was depicted on them, making it difficult to compute a final number. She declined to use the "boilerplate" computation of 75 images per video, finding that a four-level enhancement for the number of images would be more appropriate than the five levels indicated by the guidelines for 477 photographs and eleven videos:

> I think that the—so, the variance, if you want to call it that, for my recalculated guidelines would be 37. I think that would be the appropriate reflection of the seriousness of your conduct here.

R. 37, Sent. Tr. at 50. The court then found that Criminal History Category V appropriately reflected Griffith's criminal conduct over a lengthy span of time. Before announcing the sentence, the court remarked that Griffith was not the typical child pornography defendant because most were level 34 with a Criminal History Category I but Griffith was "squarely" a Category V. R. 37, Sent. Tr. at 57. After defense counsel confirmed that the court had addressed all of Griffith's arguments in mitigation, the judge sentenced Griffith to 240 months' imprisonment on each count, to run concurrently, as well as a term of supervised release. Griffith appeals.

## II.

On appeal, Griffith contends that the district court committed procedural error when it failed to correctly calculate the guidelines sentence before imposing the 240-month sentence. He also argues that the court imposed a substantively unreasonable sentence. We apply the abuse of discretion standard in reviewing whether sentencing decisions are reasonable. *Gall v. United States*, 552 U.S. 38, 46 (2007); *United States v. Smith*, 860 F.3d 508, 514 (7th Cir. 2017). We first must ensure that the district court committed no significant procedural error, such as incorrectly calculating the guidelines range, failing to consider the section 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to explain adequately the chosen sentence. *Gall*, 552 U.S. at 51; *Smith*, 860 F.3d at 514. Whether the district court committed procedural error is a question of law that we review *de novo*. *Smith*, 860 F.3d at 514; *United States v. Mendoza*, 510 F.3d 749, 754 (7th Cir. 2007).

In raising his procedural challenge, Griffith first asserts that the court did not correctly calculate the guidelines range when it initially adopted the PSR addendum's erroneous guidelines calculation. He also maintains that the court failed to rule on a final guidelines range before pronouncing sentence. These objections do not hold up to a fair reading of the sentencing transcript.

After adopting the revised PSR and its addendum during the sentencing hearing, the court became aware that the document contained an error. The revised PSR calculated the guidelines range as 324 to 405 months if the enhanced mandatory minimum applied, and as 240 months if that statutory

enhancement did not apply. Prior to the hearing, neither party noticed that the statutory cap was not limited to 240 months. Griffith had pled guilty to three counts, each with its own cap of twenty years (or 240 months), and those terms could be imposed consecutively for a total of sixty years. As we noted above, the government alerted the judge to this error after she rejected the statutory enhancement and otherwise adopted the PSR. The court agreed with the government's proposed correction and then found that the statutory maximum was sixty years. As the judge clarified at the sentencing hearing, that meant that the guidelines range was not capped at twenty years but was in fact 324 to 405 months, which was well within the sixty-year cap. Both parties expressly agreed that this was an accurate assessment of the guidelines. In other words, the court was no longer adopting the PSR in its entirety but was amending its earlier ruling to account for the corrected statutory cap of sixty years, making the correct guidelines range 324 to 405 months. An argument that the court erred in initially adopting the erroneous PSR is a non-starter. The court recognized and corrected that error before announcing the sentence. Any initial misstep was harmless because it did not affect the court's choice of sentence. *United States v. Morris*, 775 F.3d 882, 885 (7th Cir. 2015).

Griffith next claims that the court re-analyzed the five specific offense characteristics for section 2G2.2 but never recalculated the guidelines to reflect that new analysis. He is referring, of course, to the district court's discussion of a downward "variance" equivalent to two levels for use of a computer and one level for the total number of images. In context, however, it is clear that the court was not re-analyzing

the specific offense characteristics in order to correct the guidelines calculation but rather was expressing disagreement with the properly calculated guidelines sentence.

After *United States v. Booker*, 543 U.S. 220 (2005), a sentencing judge has the discretion to disagree with a particular provision of the guidelines and to impose a non-guidelines sentence that, in his or her judgment, is more consistent with the statutory sentencing factors set out in section 3553(a). *Kimbrough v. United States*, 552 U.S. 85 (2007); *Smith*, 860 F.3d at 517; *United States v. Rosales*, 813 F.3d 634, 637 (7th Cir. 2016). In the context of addressing the section 3553(a) factors, the court here explained that it routinely varied downward the equivalent of two levels because child pornography offenses virtually always involve the use of a computer, making the application of section 2G2.2(b)(6) inappropriate, in the court's opinion. The court similarly disagreed with the "boilerplate" addition of seventy-five images for each video, allowing for a downward variance equivalent to one level. The court then stated that "the variance, if you want to call it that, for my recalculated guidelines would be 37." R. 37, Sent. Tr. at 50. That mention of level 37 was likely a misstatement because it did not take into account that the court had also adopted the PSR recommendation to allow a three-level reduction for acceptance of responsibility, and so the variance was analogous to level 34, not level 37. The misstatement had no effect on the sentence, however, because the court treated the variance as equivalent to a level 34 sentence, not a level 37 sentence.

In expressing its policy disagreement with the application of certain specific offense characteristics, the court simply analogized the variance to reductions in particular specific

offense characteristic levels. The court made this adjustment under section 3553(a), and had no occasion to recalculate the final guidelines level. In Criminal History Category V, the analogous level 34 sentence yields a guidelines range of 235 to 293 months. The final sentence of 240 months is on the low end of a level 34 sentence and a full 84 months below the bottom of the properly calculated guidelines range. If, as Griffith argues, the court had mistakenly failed to account for acceptance of responsibility when deciding how much to vary, the sentence would have been significantly higher. We have no doubt that the court was not correcting the guidelines calculation but was simply explaining a downward variance under section 3553(a) from the properly calculated range by way of analogy to the guidelines.

We emphasize that it was not necessary for the court to analogize to the guidelines when explaining the downward variance. *United States v. Kuczora*, 910 F.3d 904, 908 (7th Cir. 2018) ("the sentencing court need not frame its explanation of a sentence in terms of a departure from the guidelines range, but may instead focus on the appropriateness of the sentence under § 3553.") (quoting *United States v. Courtland*, 642 F.3d 545, 550 (7th Cir. 2011)). A court need only explain why a sentence is appropriate under the statutory criteria. *Kuczora*, 910 F.3d at 908. So long as a court uses the properly calculated guidelines range as a starting point, it may explain a decision to vary from the range with reference to the section 3553(a) factors alone. *Kuczora*, 910 F.3d at 908.

We also note that the court had not found any error in the PSR's calculation of the guidelines (other than the statutory cap issue we noted earlier) and had no reason to recalculate the

guidelines. The court's Statement of Reasons explaining the sentence makes clear that the court intended for the three-level reduction to be a variance because of a policy disagreement with the properly calculated guidelines, not a change to the guidelines calculation. R. 27, at 3, ¶ VI.D. And Griffith points to no error in the district court's guidelines calculation here. Indeed, Griffith did not challenge the factual basis of the guidelines calculation or the final offense level in the district court. He argued instead that the resulting offense level was inconsistent with the purposes of sentencing expressed in section 3553(a). He did not deny, for example, that some of the photographs depicted prepubescent minors, or that certain images portrayed violence towards and sexual abuse of toddlers. He conceded that he offered access to his Twitter accounts in exchange for additional child pornography, that he used a computer and that his offenses involved more than 600 images when calculated under guidelines standards. But in conceding the basic facts underlying the calculation and the result of the "rote application" of the guidelines provisions, he objected only that the result produced a draconian and unjustified sentence. In light of all of the circumstances, the only reasonable reading of the sentencing transcript is that the court understood and announced a correct calculation of the guidelines and then varied downward by analogy to certain guidelines factors during the discussion of the statutory factors.

Finally, we can quickly dispense with any claim that the final sentence was substantively unreasonable. When assessing the substantive reasonableness of a sentence under the abuse of discretion standard, we presume that a within-guidelines

sentence is reasonable. *Rita v. United States*, 551 U.S. 338, 347–56 (2007); *United States v. Moore*, 851 F.3d 666, 674 (7th Cir. 2017). That same presumption obviously applies to a below-guidelines sentence, such as the one imposed here. *Moore*, 851 F.3d at 674. Griffith bears the burden of rebutting that presumption by demonstrating that the sentence is unreasonably high in light of the section 3553(a) factors. *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005).

Griffith attempts to surmount that challenge by arguing that his collection of child pornography was relatively small; that his crimes involved no contact offenses; that a twenty-year term was a *de facto* life sentence for a man of his age and health; that the sentence was unnecessary to deter recidivism because of his age and the lengthy term of supervised release; and that section 2G2.2 encourages unreasonably harsh sentences. The district court carefully considered and addressed each of these arguments, and Griffith's claim on appeal amounts to a request that we substitute our judgment for that of the district court. In the usual course, it would be the government, not the defendant, arguing that the court abused its discretion by granting a significantly below-guidelines sentence. In any case, the district court did not abuse its discretion in granting Griffith an eighty-four month break from the bottom of the properly-calculated guidelines sentencing range, and the sentence was substantively reasonable.

AFFIRMED.