In the

# United States Court of Appeals
## For the Seventh Circuit

No. 18-1731

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ANTHONY LOREN GARDNER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 17-cr-40054 — **Sara Darrow**, *Chief Judge.*

ARGUED MAY 21, 2019 — DECIDED SEPTEMBER 30, 2019

Before FLAUM, KANNE, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Anthony Gardner was arrested after firing a gun at two vehicles thought to be driven by rival gang members. He pleaded guilty to possessing a firearm as a felon. The district judge imposed an above-Guidelines sentence based in part on Gardner's use of violence in a prior burglary.

On appeal Gardner argues procedural error. He insists that the so-called "categorical approach," with all its doctrinal arcana and limitations, applies when a judge exercises *Booker* discretion to impose an above-Guidelines sentence based on a defendant's aggravating conduct in a prior crime. Not so. The sentencing judge may consider aggravating circumstances in a defendant's criminal record without the constraints imposed by the categorical approach that usually applies to statutory sentencing enhancements and the determination of offense-level increases and criminal-history points under the Sentencing Guidelines. Gardner also argues that the judge inadequately addressed his mental-health challenges and relied on inaccurate information in the presentence report. These arguments are waived and forfeited, respectively, and the forfeited argument does not involve a plain error. We affirm.

## I. Background

On April 22, 2017, Gardner was with his friend Davion Gary in front of Gary's house in East Moline, Illinois, when he spotted a silver Jeep circling the block. Gardner was suspicious because his friend was having problems with a rival street gang. The two men went inside Gary's house, but they soon saw the Jeep circle the block once more. Almost immediately Gardner heard gunshots. At that point he went outside with a semiautomatic handgun and fired shots at the Jeep.

Moments later a second vehicle stopped at a stop sign after passing Gary's house. Gardner wasn't sure if this vehicle was associated with the Jeep, but he didn't wait to find out. He fired at the second vehicle and then jumped into a car driven by his friend Jennifer Winterbottom. When

Gardner saw the second vehicle in the side mirror, he assumed it was following him. He got out of Winterbottom's car and again fired at the vehicle.

Officers responding to the shooting stopped Winterbottom's car, arrested Gardner, and seized a loaded handgun along with ammunition. When the officers told Gardner that the driver of the second vehicle wasn't involved with the rival gang, he remarked, "Thank God I wasn't aiming at him."

Gardner was indicted for possessing a firearm as a felon. *See* 18 U.S.C. § 922(g)(1). While in pretrial custody at the Rock Island County Jail, he engaged in additional violent behavior. Gardner

- spat in the direction of a guard;

- threatened to strike any guard that entered his cell;

- sent a fellow inmate to the emergency room with a punch to the face;

- confronted an inmate eating lunch and "started swinging his fists"; and

- snuck into an inmate's cell and began punching and kicking him.

Because of this conduct, the U.S. Marshal's Service eventually transferred Gardner to the Knox County Jail.

While awaiting trial Gardner underwent a telephonic psychological evaluation and was diagnosed with major depression, obsessive-compulsive disorder, and chronic posttraumatic stress syndrome. He eventually pleaded guilty and his attorney referred him for a second mental-health evaluation. Dr. Kirk Witherspoon, a clinical psychologist,

noted Gardner's depression and past suicide attempts. He found that Gardner "appears to [have] borderline personality disorder traits, i.e., a propensity toward marked impulsivity and reactivity without sufficient forethought or moral compunction."

The case proceeded to sentencing in March 2018. The § 922(g) offense carries a Guidelines base offense level of 14. *See* U.S.S.G. § 2K2.1(a)(6). But the base offense level increases if the defendant has one or more convictions for a "crime of violence" or a controlled substance offense. *Id.* § 2K2.1(a)(1)–(4). Gardner has a lengthy criminal record, including multiple burglaries. Until fairly recently, burglary was among the offenses listed in the Guidelines' definition of "crime of violence." In August 2016, however, the Sentencing Commission removed burglary from the definition. *See* U.S.S.G. app. C, AMEND. 798, at 118 (Supp. Nov. 1, 2018). The Commission cited several reasons for the change, including "several recent studies" showing that "most burglaries do not involve physical violence." *Id.* at 122.

Although the Commission removed burglary from the definition of crime of violence, it added this commentary:

> There may be cases in which a burglary involves violence[] but does not qualify as a "crime of violence" as defined in § 4B1.2(a) and, as a result, the defendant does not receive a higher offense level or higher Criminal History Category that would have applied if the burglary qualified as a "crime of violence." In such a case, an upward departure may be appropriate.

*Id.* at 119; U.S.S.G. § 4B1.2 cmt. n.4.

Accordingly, Gardner's presentence report ("PSR") began with a base offense level of 14, added six levels for other specific offense characteristics, and subtracted three levels for acceptance of responsibility, yielding a total offense level of 17. Combined with a Criminal History Category of IV, Gardner's Guidelines sentencing range was 51 to 63 months. The PSR added, however, that Gardner's 2011 residential burglary involved violence, which may warrant the judge's consideration of an above-Guidelines sentence.

Gardner's attorney agreed with the range calculation but objected to the PSR's suggestion that the judge consider an above-Guidelines sentence. So the government presented testimony from former Rock Island County Investigator Jason Patterson, who had interviewed the victim of the 2011 burglary. Patterson explained that the victim described a break-in at his home by two masked men in which both burglars struck him, and one used a blunt object to hit him in the head.

Based on this testimony and other information in the PSR, the judge determined that the burglary involved violence. She then heard arguments about the sentencing factors in 18 U.S.C. § 3553(a). The government asked for an above-Guidelines sentence of 92 months. Gardner's attorney argued for a sentence within the Guidelines range. Gardner addressed the court and said he was ready to change.

The judge then painstakingly weighed the aggravating and mitigating factors under § 3553(a). Regarding the 2011 residential burglary, the judge expressed her sense that "it should be treated the way that it used to be by the

[G]uidelines and factored into [Gardner's] base offense level, and I think that's a better reflection of your criminal history[,]" which would correspond to "a [G]uideline[s] [range] of 92 to 115 months." She went on to discuss the alarming circumstances of the offense, Gardner's serious criminal history, his mental-health issues, and his aggressive behavior in pretrial custody. In the end, the judge settled on an above-Guidelines sentence of 100 months in prison.

## II. Discussion

This appeal raises claims of procedural error, so our review is de novo. *United States v. Kuczora*, 910 F.3d 904, 907 (7th Cir. 2018).

Gardner first argues that the judge impermissibly applied a noncategorical approach when evaluating his 2011 residential burglary. Rather than limiting her analysis to the small universe of materials authorized by *Shepard v. United States*, 544 U.S. 13 (2005), and *Taylor v. United States*, 495 U.S. 575 (1990), the judge relied on information in the PSR and testimony from Investigator Patterson to conclude that the 2011 burglary involved violence against the victim. Gardner challenges the use of this noncategorical, fact-specific analysis, which he says led the judge to classify his 2011 burglary as a crime of violence and increase his base offense level accordingly.

But the judge did *not* increase Gardner's base offense level based on the 2011 burglary. Rather, she accepted, without objection, the PSR's Guidelines calculations and the resulting sentencing range. She then moved on to determine how much weight the 2011 burglary deserved in connection with her exercise of discretion in evaluating the § 3553(a) factors.

Gardner insists that the judge *re*calculated the Guidelines range based on the commentary contained in the new Application Note 4 to § 4B1.2, which accompanied the removal of burglary from the crime-of-violence definition. To be sure, the judge said that Gardner's 2011 burglary "should be treated the way that it used to be by the [G]uidelines and factored into [Gardner's] base offense level," which would have produced a Guidelines range of 92 to 115 months. This, in the judge's view, would more accurately capture his dangerousness.

But that doesn't mean the judge calculated a new Guidelines range. She simply explained her decision to impose an above-Guidelines sentence by analogy to the old Guidelines. *See United States v. Griffith*, 913 F.3d 683, 688 (7th Cir. 2019) ("In context, however, it is clear that the court was not … correct[ing] the [G]uidelines calculation but rather was expressing disagreement with the properly calculated [G]uidelines sentence."). The sentencing transcript shows that everyone understood this point. Indeed, Gardner's attorney repeatedly objected to using the 2011 burglary conviction as a "basis to vary upward."

Still, we take this opportunity to reiterate two points about sentencing methodology. First, we have repeatedly explained that the concept of a "departure" in Guidelines sentencing is "obsolete" and "beside the point" after *United States v. Booker*, 543 U.S. 220 (2005). *United States v. Walker*, 447 F.3d 999, 1006 (7th Cir. 2006). Discretion has replaced formal departure analysis in post-*Booker* sentencing, and the rules that apply to offense-level increases and criminal-history points on the sentencing grid do not apply to the judge's assessment of the § 3553(a) factors. Second, it's "not

necessary for the court to analogize to the [G]uidelines when explaining [a] … variance" from the Guidelines range. *Griffith*, 913 F.3d at 689. "[A]s long as a judge uses a properly calculated Guidelines range as a starting point, [the judge] may explain a decision to vary from that range with reference to the statutory factors alone." *Kuczora*, 910 F.3d at 908.

Next, Gardner argues that the judge failed to adequately address his mental-health challenges. This argument is waived. In *United States v. Garcia-Segura*, we encouraged district judges to specifically inquire whether the defendant is satisfied that the court has addressed all arguments in mitigation. If the answer is "yes," "a later challenge for failure to address a principal mitigation argument … [is] waived." 717 F.3d 566, 569 (7th Cir. 2013); *accord United States v. Rosales*, 813 F.3d 634, 638 (7th Cir. 2016). That's what happened here. The judge specifically asked Gardner's counsel if she had adequately addressed all of his principal arguments in mitigation, and he said, "Yes." The judge also asked if counsel wanted any further elaboration of the sentence, and counsel responded, "No, thank you." That's a waiver. *See United States v. Waldrip*, 859 F.3d 446, 449 (7th Cir. 2017).

Finally, Gardner contends that the judge relied on "unreliable reporting" in the PSR about his conduct in pretrial custody. Plain-error review applies because Gardner did not object to the information in the PSR when given an opportunity to do so. *See United States v. Corona-Gonzalez*, 628 F.3d 336, 340 (7th Cir. 2010). So he must show a "clear" or "obvious" error that affected his substantial rights. *See United States v. Pankow*, 884 F.3d 785, 791 (7th Cir. 2018).

He hasn't come close to doing so. Gardner criticizes the PSR's "scant detail," but he never fills in the alleged gaps. He quibbles about the number of times he was actually cited for misconduct in the jail, but the judge didn't rely on a tally. Rather, she merely described his conduct and noted that it was consistent with someone who has a history of violent outbursts. He also quarrels about the nuances of the judge's characterizations of his behavior. We see no error, let alone plain error, which is one that is *clear*, not "subtle, arcane, [or] debatable." *United States v. Ramirez*, 783 F.3d 687, 694 (7th Cir. 2015).

AFFIRMED