In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 23-2653

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MIGUEL SALINAS-SALCEDO,

*Defendant-Appellant.*

———————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:21-cr-00591-1 — **Sharon Johnson Coleman**, *Judge.*

———————

ARGUED JANUARY 14, 2025 — DECIDED SEPTEMBER 2, 2025

———————

Before RIPPLE, BRENNAN, and KOLAR, *Circuit Judges.*

KOLAR, *Circuit Judge.* Miguel Salinas-Salcedo helped Mexican drug cartels launder millions of dollars over two-and-a-half-years. He did so by connecting cartel members with individuals in the United States who he believed were able to funnel large sums of cash into cartel bank accounts without alerting government authorities. At his sentencing (he pled guilty), the district court applied a four-level guidelines enhancement for being in the business of laundering funds.

Because Salinas-Salcedo's undisputed actions, which he admitted were "integral" to the multi-year, multi-transaction conspiracy, place his conduct squarely under that covered by the "business of laundering funds" enhancement, we affirm.

## I. Background

On August 7, 2023, Miguel Salinas-Salcedo pled guilty to one count of conspiracy to commit money laundering in violation of 18 U.S.C. §1956(h). In his plea agreement, Salinas-Salcedo admitted the facts relevant to this appeal.

From April 2019 through September 24, 2021, Salinas-Salcedo helped the cartels transform bulk cash derived from illegal drug sales into ostensibly legitimate bank account deposits. Salinas-Salcedo connected the cartels with two individuals who purported to be able to receive, deposit, and transfer tens of thousands of dollars into United States bank accounts without triggering government attention.

Here is how Salinas-Salcedo made it work. First, the cartels would contact Salinas-Salcedo when they needed to move cash into one of their bank accounts. Then, Salinas-Salcedo would reach out to one or both of his contacts who would pass on cryptic instructions for Salinas-Salcedo to give to the cartel. Duly informed by Salinas-Salcedo, the cartel then reached out to the courier designated to receive the bulk cash and recited back the secret verbal code Salinas-Salcedo gave them to authenticate the transaction. After the cartel agent and courier met up and the courier received the cash, Salinas-Salcedo confirmed with the courier the amount successfully deposited into a bank account. He then circled back with the cartel to obtain the bank account information for where to wire the

funds and gave those details to the on-the-ground contacts to complete the transfer.

Unbeknownst to Salinas-Salcedo, at one point, three of his American contacts (individuals with access to accounts and a courier) were undercover law enforcement agents. While he hoped to enrich himself in dealing with these contacts, in reality, Salinas-Salcedo was merely providing evidence of his guilt.

Over the conspiracy's lifespan, Salinas-Salcedo facilitated 24 transactions that laundered $2,969,082. He wanted to complete many more "contracts"—in fact, over the period he discussed taking on 79 additional jobs, which would have laundered roughly $15 million of additional cash. Nonetheless, the 24 completed transactions yielded Salinas-Salcedo $44,526.23 in personal commissions.

At sentencing, the government sought a four-level enhancement under U.S.S.G. §2S1.1(b)(2)(C) against Salinas-Salcedo for being "in the business of laundering funds."[1] He countered that he was not "in the business of laundering funds," as contemplated by the guidelines, because he was merely a "middleman" who did not directly handle the laundered cash. The district court heard argument on the issue—recall there were no factual disputes about what Salinas-Salcedo actually did—and pressed Salinas-Salcedo to justify his central objection. The court questioned how Salinas-Salcedo's integral participation in the money laundering conspiracy did not put him in the business of laundering funds.

---

[1] The district court considered and decided upon two other guidelines adjustments, neither of which are on appeal before us.

The district court then found the enhancement applied and imposed a below guidelines sentence of 96 months in prison.

Salinas-Salcedo now revives the same argument on appeal that, as merely a middleman, he was not in the business of laundering funds.

## II. Analysis

In the sentencing context, we review the district court's factual findings for clear error. *United States v. Bowling*, 952 F.3d 861, 869 (7th Cir. 2020). But because the parties agree on all the relevant facts, our review is purely one of Sentencing Guidelines interpretation, which is *de novo*. *United States v. Reese*, 666 F.3d 1007, 1021 (7th Cir. 2012) (citation omitted).

### A. The Business of Laundering Funds Enhancement

We begin with the plain text of the guidelines and "'give effect, if possible, to every clause and word' of the text." *United States v. Feeney*, 100 F.4th 841, 845 (7th Cir. 2024) (quoting *Loughrin v. United States*, 573 U.S. 351, 358 (2014)). Guideline §2S1.1(b)(2)(C) enhances a sentence by four levels if the defendant was "in the business of laundering funds." The application note defines "[l]aundering funds" as "making a transaction, financial transaction, [or] monetary transaction ... in violation of 18 U.S.C. § 1956 or § 1957," the money laundering statutes. U.S.S.G. §2S1.1 cmt. n.1. So, we turn to the statutes.

One of them, 18 U.S.C. §1956, prohibits someone who, knowing that "property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful

activity … knowing that the transaction is designed in whole or in part … to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity….” 18 U.S.C. §1956(a)(1).

The operative verb—“*conducts* or attempts to *conduct*”—captures a wide array of activity. *Id.* (emphasis added). As defined in the text, it includes “initiating, concluding, or participating in initiating, or concluding a transaction….” 18 U.S.C. §1956(c)(2). And the ordinary meaning of “participate” is “to take part” or “to have a part or share in something.”[2] *See Niz-Chavez v. Garland*, 593 U.S. 155, 169 (2021) (appropriate to “consult grammar and dictionary definitions” when deducing a text’s meaning because “the rules that govern language often inform how ordinary people understand the rules that govern them”).

In other statutory contexts we have “interpreted broadly the phrase ‘participate in’ and ‘participation….’” *Harden v. Raffensperger, Hughes & Co., Inc.*, 65 F.3d 1392, 1400 (7th Cir. 1995) (citing *Pinter v. Dahl*, 486 U.S. 622, 650 n.26 (1988)). In securities fraud, for instance, a defendant “participates” in the distribution of securities when they “engage in steps necessary to the distribution of securities” even if they do not actually sell the financial instrument. *Id.* (citation omitted). Participation cannot be read to impose a standard lower than a “but for” standard of causation—“but for” Salinas-Salcedo’s actions, would the money laundering have occurred? *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (equating a

---

[2] *Participate*, Merriam-Webster Dictionary Online, https://www.merriam-webster.com/dictionary/participate [https://perma.cc/FV5J-PJBS] last visited Aug. 11, 2025).

"but-for causal relationship" to a "necessary logical condi-
tion" for an event to occur (quoting *Safeco Ins. Co. of America
v. Burr*, 551 U.S. 47, 63–64 (2007))).

At sentencing, Salinas-Salcedo admitted that he was an
"integral" part of the money laundering scheme, and the stip-
ulated facts in his plea agreement reflect the same. He was the
nexus between the cartels and the purported on-the-ground
launderers. He did much more than merely "take part" in in-
itiating the laundering; the transactions would not have be-
gun nor concluded without his multi-phase involvement. We
do not need to broadly construe "participate" to affirm the
commonsense notion that one who is an "integral" part of an
operation—from beginning to end—necessarily participates
in it. The district court judge was undoubtedly thinking the
same thing when she asked: "if [Salinas-Salcedo] is participat-
ing in whether it is texting, sending e-mails regarding this,
even though he is not the one who takes money into the bank
or wires it directly to the bank, how is he not involved in the
overall business of money laundering?"

Squarely recognizing that Salinas-Salcedo's actions consti-
tuted money laundering under 18 U.S.C. §1956(a)(1) is essen-
tial to clearing up the false premise underlying his appeal. Sa-
linas-Salcedo believes the "business of laundering funds" en-
hancement cannot apply because he was the middleman, not
the money launderer himself. But our textual analysis belies
that argument. The meaning of "business of laundering
funds" under §2S1.1(b)(2)(C) incorporates 18 U.S.C.
§1956(a)(1)'s definition of money laundering. U.S.S.G. §2S1.1
cmt. n.1. And §1956(a)(1) encompasses Salinas-Salcedo's con-
duct because he participated in initiating and concluding
transactions §1956(a)(1) deems money laundering. Thus,

Salinas-Salcedo did "launder funds" as §2S1.1(b)(2)(C) describes.

To be clear, Salinas-Salcedo was not in the "business of laundering funds" merely because he engaged in one transaction meeting 18 U.S.C. §1956's elements. Guideline §2S1.1(b)(2)(B) addresses that scenario, which warrants only a two-level enhancement. But to fall under §2S1.1(b)(2)(C), the four-level "business of laundering funds" enhancement, the sentencing court must determine if the "totality of the circumstances," including weighing six non-exhaustive factors, reveal defendant's laundering conduct was sufficiently extensive to be "in the business" of laundering funds. U.S.S.G. §2S1.1 cmt. n.4.

Salinas-Salcedo's misguided textual argument permeates the rest of his challenge. The non-exhaustive factors are: the regularity and length of time with which a defendant "engaged" in laundering funds (factors one and two), the number of sources a defendant "engaged" to launder funds (factor three), the amount of money a defendant earned for laundering funds (factor four), prior money laundering or relevant convictions (factor five), and statements a defendant made during undercover government investigations about engaging in any of the preceding five factors (factor six). U.S.S.G. §2S1.1 cmt. n.4. Because he positions himself as merely a middleman rather than principal, Salinas-Salcedo argues he never "engaged" in laundering funds as described in the factors. But as explained above, he *did* launder funds as contemplated by §2S1.1 and 18 U.S.C. §1956(a)(1). So, the "engaged" argument falls flat.

Turning to the factors, four of the six clearly militate for the enhancement.[3] His 24 transactions over two-and-a-half years were regular and over an extended period (factors one and two). He generated a substantial amount of revenue, almost $45,000, for his services (factor four). And he discussed his regular laundering activities with undercover agents during the investigation (factor six). The enhancement was applicable and, notwithstanding the textual arguments already addressed, Salinas-Salcedo lodges no objection to the contrary.

Stepping back from the non-exhaustive factors, we think Salinas-Salcedo's activity presents a model application for §2S1.1(b)(2)(C). First, echoing the district court, we cannot accept that an admitted "integral" member of a multi-year money laundering conspiracy, necessary to the transactions at their inception and conclusion, and compensated handsomely, was not "in the business of laundering funds."

Second, the stated purpose of the enhancement reinforces our interpretation of the text. The Sentencing Commission's Commentary explained that "similar to a professional 'fence', *see* §2B1.1(b)(4)(B),[4] defendants who routinely

---

[3] Salinas-Salcedo confined his objection to the textual meaning of the word "engaged." He did not alternatively argue, at the district court or on appeal, that if he did "engage" in laundering funds, his activity was not regular or for an extended period (factors one and two) or that he did not discuss his regular money laundering activities for an extended period during an undercover government investigation (factor six). While we could likely forego a factor analysis as waived, we engage with the test in the interest of completeness. *United States v. Butler*, 58 F.4th 364, 368 (7th Cir. 2023) (appellants waive undeveloped argument on appeal).

[4] Under the current version of the Sentencing Guidelines, the relevant section is located at §2B1.1(b)(4).

engage in laundering funds on behalf of others, and who gain financially from engaging in such transactions, warrant substantial additional punishment because they encourage the commission of additional criminal conduct." U.S.S.G. App'x. C, Vol. II, at 223 (2003). The "fence" enhancement applies to individuals who are "in the business" of buying and selling stolen property. U.S.S.G. §2B1.1(b)(4). In this way, the "in the business of" enhancements harmonize to punish activity that encourages the commission of more crimes by creating a market for criminal proceeds. *United States v. Aguasvivas-Castillo*, 668 F.3d 7, 14 (1st Cir. 2012); *United States v. Kimbrew*, 406 F.3d 1149, 1152–53 (9th Cir. 2005) (enhancement for those who make a business of buying and selling stolen property important because fencing businesses encourage theft by increasing potential gains). That rationale applies to Salinas-Salcedo's activity because he made it easier for the cartels to convert dirty cash into seemingly unimpeachable assets. *See* U.S.S.G. App'x. C, Vol. II, at 223.

### B. Procedural Error

Salinas-Salcedo alternatively argues that the district court failed to adequately address his objection to the §2S1.1(b)(2)(C) enhancement, which was procedural error meriting reversal. He is incorrect. We must "ensure that the district court committed no significant procedural error, such as incorrectly calculating the guidelines range, failing to consider the section 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to explain adequately the chosen sentence." *United States v. Griffith*, 913 F.3d 683, 687 (7th Cir. 2019). "So long as the record gives us confidence that the court meaningfully considered the defendant's mitigation arguments, 'even if implicitly and imprecisely,' that is

enough." *United States v. Jones*, 798 F.3d 613, 618 (7th Cir. 2015) (quoting *United States v. Diekemper*, 604 F.3d 345, 355 (7th Cir. 2010)).

The district court judge went back and forth with Salinas-Salcedo over his primary "business of laundering funds" argument, which leaves no doubt for the reasons she found the enhancement applicable. She inquired about how to think about the amount of money laundered (the amount attempted or actually laundered) and expressed skepticism of his textual argument before rejecting it. And while the district judge's general assertion that she considered the "totality of the circumstances" did not necessarily explicitly encompass a full exploration of the non-exhaustive factors, she responded to his textual argument when she found a four-level enhancement was appropriate because Salinas-Salcedo was liable as a principal launderer of funds.

Critically, unlike in Salinas-Salcedo's cited authority, the parties agreed on the material facts, obviating any reason for the district court to expound on its factual findings. *Cf. United States v. King*, No. 23-1138, 2024 WL 911070 at *2 (7th Cir. Mar. 4, 2024) (unpublished) (error when district court failed to identify which witnesses it credited on contested fact); *United States v. Lucena-Rivera*, 750 F.3d 43, 52–53 (1st Cir. 2014) (error to substantiate enhancement solely with statement that drug-trafficking and money-laundering activity was "intertwined" without additional laundering evidence). The crux of Salinas-Salcedo's argument was legal, not factual, and the district court fully addressed it.

### III. Conclusion

For the foregoing reasons, we AFFIRM.